**UNITED STATES of America, Appellee,**

v.

**Kerry POULACK, Defendant-Appellant.**

**No. 76–1434.**

United States Court of Appeals,
First Circuit.

Argued March 2, 1977.

Decided May 26, 1977.

Martin G. Weinberg, Boston, Mass., by appointment of the court, with whom Oteri & Weinberg, Boston, Mass., on brief, for defendant-appellant.

Robert B. Collings, Asst. U. S. Atty., Chief, Criminal Division, Boston, Mass., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, and MOORE * and CAMPBELL, Circuit Judges.

MOORE, Circuit Judge:

Kerry Poulack appeals from a judgment of conviction entered against him on August 17, 1976, following a jury trial in the United States District Court of Massachusetts. Poulack was convicted on two counts of conspiracy to commit bank robbery and bank robbery in violation of 18 U.S.C. § 2113(a). He raises several arguments on appeal, none of which warrant reversal of his conviction.

## I.

On February 19, 1976, Poulack was indicted with four others and charged on several counts arising out of the December 4, 1974, bank robbery of the Essex County Bank and Trust Company in West Peabody, Massachusetts. He was arraigned on February 27, 1976, entering a plea of not guilty. Because he and one other of the defendants could not raise bail, they were detained to await trial. Throughout these pretrial proceedings, Poulack was represented by his hired counsel, Harvey Brower, or a representative of Mr. Brower's office.

The case was called for trial on April 5, 1976. It was then that the court first learned that attorney Brower could not be present to represent Poulack due to his simultaneous commencement of a case in Rhode Island. The Rhode Island case, moreover, was expected to last anywhere from six weeks to three months, keeping Brower unavailable for Poulack's trial until mid-summer. Poulack, however, expressly stated his desire to have his case continued until Brower could represent him. He made clear his willingness to waive any and all constitutional and statutory rights to a speedy trial and to remain in detention in the interim in order to be represented by Brower himself. Complicating matters fur-

* Honorable Leonard P. Moore, United States Circuit Judge for the Second Circuit, sitting by designation.

ther, the Government opposed any severance of Poulack in light of trial considerations, such as the number of defendants, the significance of the conspiracy evidence against them, and the burdens of multiple trials. Also relevant was the fact that a postponement without severance of Poulack's trial might have required his co-defendant to remain even longer in pretrial detention.

On weighing these various considerations, the court concluded that, for the present, Poulack's wish to have attorney Brower represent him outweighed the need for a prompt criminal trial. The court granted a continuance of the trial to July 7, 1976, a delay it considered reasonable.

The next hearing in the case was held on June 16, 1976. At that time the court learned that attorney Brower's Rhode Island trial would probably proceed through July, and that Brower was under court order to represent Poulack before another court on other charges immediately upon its completion. It thus appeared likely that Brower would not be available for Poulack's defense in this case until at least September, 1976. At this time, however, the co-defendant who had been detained pending trial had been convicted and incarcerated for another crime, so his pretrial detention was no longer a factor weighing in favor of prompt disposition of this trial. Once again the court was forced to weigh Poulack's desire to have Brower represent him against the ever-present need to avoid further delays in the case. Because it deemed a further three-month continuance unreasonable, the court, on June 21, 1976, ruled that Poulack had to retain another attorney so as to begin the trial as scheduled on July 7, 1976.[1]

The court gave Poulack ample opportunity to retain other counsel, offering to provide him with lists of qualified attorneys from which to choose. But Poulack adamantly refused to consent to any substitution, arguing that he had a "right" to counsel of his choice. To overcome this impasse, the court appointed an attorney to represent Poulack, and went so far as to promise to arrange payment for the attorney pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A, despite the fact that Poulack was not technically in forma pauperis.

After one unsuccessful attempt by the court to appoint an attorney, Poulack agreed, on June 25, 1976, to accept attorney Martin Weinberg as his counsel. However, he explicitly reserved his claim that his "right to counsel" was being infringed. At Weinberg's request, the court granted a continuance until July 12, 1976, to allow time for complete preparation of the defense. The trial, which lasted four days, ended in a jury verdict of guilty against Poulack on both counts of the indictment.

Poulack repeats here his argument, made so resolutely before the trial judge, that he has a "right" to be represented by the lawyer of his choice. As long as he was willing to forego his rights to a speedy trial, his argument goes, the trial court should have bowed to his desire for representation by Brower. At least, he submits, this court should find that the trial judge abused his discretion by concluding that the need to bring this case to trial outweighed Poulack's determined request.

1. Poulack has argued before us that the June 21 ruling of the district court was grounded on a legal assumption that the exclusionary periods of the Speedy Trial Act, 18 U.S.C. § 3161(h), cannot apply to the section of the Act expressly dealing with pretrial detainees, 18 U.S.C. § 3164(a)(1); an assumption with which appellant argues we should disagree. Compare United States v. Tirasso, 532 F.2d 1298 (9th Cir. 1976), with United States v. Masko, 415 F.Supp. 1317 (W.D. Wis. 1976). But the precise interrelationship of these statutory sections is not of concern here.

As we read the record, the trial court believed in June, as it had in April, that the exclusionary periods applied, but determined that "the ends of justice served" by a further delay did not outweigh "the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). Without deciding whether the district court's, and the defendant's, view of the law is correct, the issue before us is whether the court's determination to override Poulack's absolute waiver of his speedy trial rights was an abuse of discretion.

Poulack, it should be noted, does not allege that he was denied an opportunity to obtain substitute counsel after Brower's unavailability had been determined. Nor has he raised any claim that Weinberg had inadequate time to prepare or otherwise failed to provide an expert and vigorous defense at trial. The sole issue here is the propriety of the trial court's decision to adhere to the July 7 trial date in the face of Poulack's wish to postpone the trial to obtain Brower's services.

The right to counsel guaranteed by the Sixth Amendment is indeed a cornerstone of our national system of ordered liberty. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). But it is as well recognized that a criminal defendant's absolute right to counsel does not confer an absolute right to a *particular* counsel. *Carey v. Rundle*, 409 F.2d 1210 (3d Cir. 1969), *cert. denied*, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970); *United States v. Tortora*, 464 F.2d 1202 (2d Cir.), *cert. denied sub nom. Santoro v. United States*, 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972); *United States v. Hampton*, 457 F.2d 299 (7th Cir.), *cert. denied*, 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101 (1972). Blending an appreciation of the inevitable difficulties of trial administration with a concern for constitutional protections, the cases uniformly hold that the right of an accused to choose his own counsel cannot be insisted upon in a manner that will obstruct reasonable and orderly court procedure. *See, e. g., Maynard v. Meachum*, 545 F.2d 273, 278 (1st Cir. 1976); *United States v. Bragan*, 499 F.2d 1376 (4th Cir. 1974); *Lofton v. Procunier*, 487 F.2d 434 (9th Cir. 1973); *United States v. Casey*, 480 F.2d 151 (5th Cir.), *cert. denied*, 414 U.S. 1045, 94 S.Ct. 550, 38 L.Ed.2d 336 (1973). As the Third Circuit succinctly stated in *Carey v. Rundle, supra*:

> "Desirable as it is that a defendant obtain private counsel of his own choice, that goal must be weighed and balanced against an equally desirable public need for the efficient and effective administra-

tion of criminal justice." 409 F.2d at 1214.

Whether to grant or to deny a continuance for the purpose of having a particular counsel represent a defendant is thus committed to the discretion of the trial court. *United States v. Brown*, 495 F.2d 593 (1st Cir.), *cert. denied*, 419 U.S. 965, 95 S.Ct. 226, 42 L.Ed.2d 179 (1974). Therefore, any claim by Poulack that his having been forced to proceed to trial without Brower mandates reversal of his conviction *per se*, is wholly without merit.

Rather, our review of the trial court's decision must focus on whether the judge abused his discretion in deciding that the need for an expeditious trial outweighed Poulack's desire to be represented by Brower. There are no mechanical tests for deciding when a denial of a continuance is an abuse of discretion. Each case must be evaluated on its own facts. *See United States v. Brown, supra*, at 600; *Rolon Marxuach v. United States*, 398 F.2d 548, 551 (1st Cir.), *cert. denied*, 393 U.S. 982, 89 S.Ct. 454, 21 L.Ed.2d 443 (1968). *Cf. United States v. Correia*, 531 F.2d 1095 (1st Cir. 1976). Suffice it to say that the totality of events recounted above makes clear that the district court did not abuse its discretion in finding that a months-long continuance beyond July 7 was outweighed by the interests of the public and the defendants in a speedy trial. Indeed, the circumstances of this case show that the trial judge's discretion was tempered by conscientious solicitude for Poulack's desires, and that the court satisfied both the Constitution and the Speedy Trial Act, 18 U.S.C. § 3161(a) (Supp. V 1975), by doing all that was reasonably necessary to meet the situation. Morever, since Poulack was afforded ample opportunity to select substitute counsel of his own choice, and because counsel appointed by the court had adequate time to prepare a vigorous and competent defense at trial, there has been no showing of any violation of the Sixth Amendment.

## II.

Part of the Government's proof against Poulack at trial consisted of his fingerprints on a check and copies of checks taken during the robbery for which he was charged. Massachusetts State Police had discovered the checks in a car driven by Poulack approximately five months after the robbery, during a search of the vehicle and its contents. The search was conducted pursuant to a state search warrant issued in connection with an investigation of a suspected check counterfeiting ring. In a pretrial suppression hearing before the district court, Poulack made several challenges to the validity of the state warrant authorizing the search; all are raised once again on appeal. The district court properly rejected them.

Poulack attacks the affidavits underlying the warrant to search the car. One of the affidavits of the two policemen who presented facts to support probable cause contained the assertions of a confidential informant previously used by the police and demonstrably reliable. The informant recounted facts within his own knowledge regarding the suspected counterfeiting operation, and he relayed to the police the incriminating report of an unnamed female participant in the counterfeiting effort. Poulack contends that any reliance on the relayed statements of this participant in the illegal venture is error. He cites *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), arguing that the woman's statements cannot be accorded any weight because her veracity had not been previously demonstrated.

But it is well-established that hearsay may contribute to the existence of probable cause so long as there is a "substantial basis" for crediting the hearsay information. *Jones v. United States*, 362 U.S. 257, 269, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). *See United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Poulack fails to appreciate the factors present here which provide the necessary basis for crediting the woman's account. Her statements here were admissions of participation in a crime, albeit not made to a police officer, and thus arguably "carry their own indicia of credibility", *United States v. Harris*, 403 U.S. 573, 583–85, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723 (1971). But even apart from this consideration, the facts as reflected in the affidavits of the policemen sufficiently corroborated the account of the unnamed woman to commend her information. A good part of her report was acquired in an encounter with one of the counterfeiters which was attended, and corroborated, by the reliable informant. And other parts of the woman's account were confirmed by extrinsic findings of the police as well as the report of the reliable informant. For example, the reliable informant verified by personal observation that counterfeiting equipment was being stored in a room of the motel at which the unnamed woman said she had posed for a fraudulent driver's license photograph. Also, the police confirmed through the Massachusetts Registry of Motor Vehicles that the woman's description of the camera which she saw at the motel closely fit that of several license cameras recently stolen from the Registry. And the police corroborated that a large number of counterfeit checks had been cashed at the local bank named by the woman on the day she specified. The facts here, in sum, demonstrate the reasonableness of crediting the hearsay. *United States v. Harris, supra*, at 580–83, 91 S.Ct. 2075; *Jones v. United States, supra*, 362 U.S. at 267–73, 80 S.Ct. 725. *See also United States v. Mark Polus*, 516 F.2d 1290, 1292–93 (1st Cir.), *cert. denied*, 423 U.S. 895, 96 S.Ct. 195, 46 L.Ed.2d 127 (1975).

Poulack also claims that the affidavits underlying the warrant to search the car contained a "misrepresentation of a material fact". Brief of Appellant at 48. The discrepancy on which he places so much weight is that one of the affidavits states that the group of suspected check counterfeiters, who had been under police surveillance for over two weeks, were observed

exiting the car and entering room *215* of a local motel with counterfeiting equipment. A further affidavit, recounting the information supplied by the confidential informant, in two places refers to efforts undertaken by the same group of suspected counterfeiters in room *214* of the same motel. Poulack alleges that these portions of the affidavits must be vitiated because of this "misrepresentation" regarding the room numbers. Without them, he claims, there was insufficient probable cause to validate the issuance of the search warrant.

This argument is without merit. In the first place, the supporting affidavit which contains the information derived from the informant expressly states (Defendant's Exhibit #1, p. 7) that the suspected counterfeiters occupied *both* rooms 214 and 215. This alone undercuts Poulack's allegation that the affidavits failed to provide a "nexus" between the two rooms. Brief of Appellant at 45. But even without this "nexus", in the context of these affidavits the statements regarding the room numbers certainly cannot be described as nontrivial misstatements requiring suppression of evidence. *United States v. Belculfine*, 508 F.2d 58 (1st Cir. 1974). *See* Kipperman, *Inaccurate Search Warrant Affidavits as a Ground for Suppressing Evidence*, 84 Harv.L.Rev. 825 (1971). Whatever importance the misstatement might have if the warrant authorized a search of the rooms, it was certainly trivial in a warrant to search a car parked outside an entryway common to both rooms.

In addition, these affidavits clearly supply sufficient probable cause to support the judicial officer's issuance of the search warrant. The documents alleged that a group of identified individuals, some of whom had in the past been convicted of counterfeiting, were conducting a check counterfeiting operation. The papers stated the weeks-long surveillance effort of the police and described the movement and place of use of various described equipment (*e.g.*, a camera and mechanical check printer) believed to be a part of the venture. They also identified the motel location of the counterfeiting venture and provided detailed internal information regarding the ring's management. Moreover, the affidavits demonstrated that the police had established that State Motor Registry cameras and equipment similar to that used by the suspects had recently been stolen and that a rash of counterfeit checks were being cashed at local bank branches. Finally, the affidavits showed that on the afternoon of the day of the search the police had observed the suspects place the counterfeiting paraphernalia in the car later searched. When read in a "commonsense and realistic fashion", *United States v. Ventresca, supra*, 380 U.S. at 108, 85 S.Ct. 741; *Haefeli v. Chernoff*, 526 F.2d 1314, 1319 (1st Cir. 1975), these affidavits clearly show that the issuing judicial officer had probable cause to believe that a search of the contents of the car would reveal contraband involved with the suspected counterfeiting operation.

### III.

At trial, the Government introduced exemplars of Poulack's fingerprints as well as the latent prints found on the seized check and check copies. Before trial, the court had properly allowed the defense to hire a fingerprint expert capable of making an "independent analysis" of these prints, affording the defense $300 for that purpose. On appeal, however, Poulack argues that these acts of the trial court were not sufficient; he claims that the court erred in not supplying the defense with "the original exemplars and the original latent prints used by the government in its fingerprint analysis". Brief of Appellant at 65.

The Government is correct in labeling this contention "frivolous in the extreme". Brief of Appellee at 25. Obviously, the fingerprints of Poulack were always fully available to the defense, and the latent prints on the seized checks and check copies were properly given to the defense for the trial. Moreover, on the third day of the trial, before the prints were introduced into evidence, the defense suggested that the Government agree to stipulate that the prints on the contraband were those of Pou-

lack. It was the Government which refused the stipulation. Trial Tr. at 3–4 to 3–5. Any claim that the defense was unable to analyze the prints and to use the results appropriately is thus groundless. Certainly there is no basis for any claim that Poulack's use of the fingerprint expert was restricted in any way by the Government.

■ Poulack makes two other arguments which require only brief comment. He contends that the trial court erred by refusing to require a pretrial *in camera* interview of the informant mentioned in the affidavit underlying the search warrant discussed above in Part II. The cases cited by Poulack as requiring such an *in camera* procedure, however, all concerned warrantless police actions, where the reliability of the informant could not otherwise be ascertained. Here, by contrast, the reliability of the information provided by unnamed individuals was amply established in the papers underlying the search warrant. The district court was clearly not required to demand production of the informant. *McCray v. Illinois,* 386 U.S. 300, 311, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *United States v. Ventresca, supra,* 380 U.S. at 108, 85 S.Ct. 741.

■ Neither was it error for the district court to refuse to permit the defense to ask a witness about a statement that he planned to "frame" a defendant in an entirely separate case. Kevin Trainor, an admitted participant in the bank robbery for which Poulack was charged, testified against Poulack at trial. On cross-examination, the defense brought out that Trainor was a self-confessed perjurer who did not particularly like Poulack. Trainor also testified that he had become a cooperating witness for the Government on his own initiative in an attempt to avoid a long jail sentence for a different robbery and that he had confessed to the authorities concerning a series of crimes which he had committed, but for which he had not yet been federally indicted.

The defense was given a broad-ranging opportunity to question Trainor about his bad relations with Poulack and the risk that he might commit perjury at the trial to curry favor with the Government. What the court excluded was a question as to whether Trainor had once told a prisoner that he planned to "frame" a defendant named Johnston in an entirely unrelated case. The defense claimed that the question was designed to establish Trainor's "bias" against Poulack. But the question would not have demonstrated anything regarding Poulack; the most that can be said is that it might have tended to show Trainor's bias against Johnston.

Moreover, if the offer of proof is deemed a means of attacking Trainor's credibility, then the district court's ruling was entirely within the guidelines of Fed.R.Evid. 608(b). That rule places within the discretion of the court whether or not to allow inquiry into specific instances of a witness' conduct which might reflect his character for truthfulness. Here, against the background of the extensive cross-examination into Trainor's unsavory character and his fragile regard for the truth, the court acted reasonably in excluding inquiry into Trainor's alleged statement about an entirely unrelated person in an entirely unrelated trial. Certainly these facts do not show any abrogation of Poulack's right to confront witnesses against him. Of course, in no event could Trainor's statement have been proved by extrinsic evidence. Fed.R.Evid. 608(b).

### Conclusion

The conviction of Kerry Poulack is *Affirmed.*