UNITED STATES of America, Appellee,

v.

Richard A. DIOZZI, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Diane M. DIOZZI, Defendant, Appellant.

Nos. 85–2017, 85–2018.

United States Court of Appeals, First Circuit.

Argued Sept. 11, 1986.

Decided Dec. 16, 1986.

Carolyn M. Conway, Boston, Mass., for Richard A. Diozzi and Elliot D. Lobel for Diane M. Diozzi, with whom DiMento & Sullivan and Peckham, Lobel, Casey & Tye, Boston, Mass., were on joint brief, for defendants, appellants.

Dennis J. Kelly, Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, Chief Judge, WISDOM,* Senior Circuit Judge, and COFFIN, Circuit Judge.

COFFIN, Circuit Judge.

Diane and Richard Diozzi were convicted of multiple counts of income tax evasion. They argue on appeal that the pretrial disqualification of their defense attorneys violated their sixth amendment right to counsel of choice. The Diozzis originally brought this argument to our attention in their pretrial petition for a writ of mandamus directing the district court to revoke its disqualification order. Though we found that interlocutory intervention through the extraordinary remedy of mandamus was inappropriate, we suggested that district court judges should exercise caution in disqualifying attorneys, especially if less serious means would adequately protect the government's interests. We specified that "our opinion in *United States v. Cortellesso*, 663 F.2d 361 (1st Cir.1981), does not necessarily sanction disqualification of counsel whenever the government wishes to call defense counsel as a witness," and we encouraged the district court to take a "hard second look" at its own order in light of the serious consequences of improper disqualification. *In re Diozzi*, No. 85–1468, Order (1st Cir. June 28, 1985). We now find that the district court's disqualification order violated appellants' qualified right to counsel of choice and that appellants' convictions must therefore be set aside.

## FACTUAL BACKGROUND

In January 1982, the Internal Revenue Service began an investigation into Richard and Diane Diozzi's tax liability for the years 1978–80. The investigation focused on unreported income from the Diozzis' unincorporated business, "RAD." The Diozzis retained attorney David P. Twomey

in April 1982, and Twomey hired certified public accountant Charles McNally to assist him in researching the case. After meeting with the Diozzis and reviewing their books and records, McNally prepared several memoranda for Twomey. Twomey reviewed these memoranda with McNally and with the Diozzis. On February 1, 1983, pursuant to a power of attorney form authorizing him to represent the Diozzis, Twomey filed with the IRS a fifty-three page document consisting of the memoranda that McNally had prepared and Twomey had reviewed. It contained the Diozzis' description, by their representatives, of their accounting, tax, and other business practices as well as the "taxpayers' representative's analysis and conclusions demonstrating total lack of criminal intent on part of taxpayers." Twomey was also present when McNally made an oral presentation of the Diozzis' position to IRS representatives. Although Twomey temporarily withdrew as counsel for the Diozzis in 1984, he officially reentered the case after the Diozzis were indicted in April 1985.

After Twomey's withdrawal, Richard Diozzi retained attorney Kenneth A. Lehman, who in turn hired certified public accountant Roger Miller to aid him in research and preparation. Lehman and Miller interviewed Twomey, McNally, and the Diozzis; reviewed the documents that they had provided (including the Twomey submission to the IRS); and met briefly with Justice Department representatives. On June 18, 1984, Lehman submitted to the Tax Division of the U.S. Department of Justice, a forty-four page memorandum that he and Miller had prepared. This document contained factual information obtained from the Twomey submission about the Diozzis' business practices as well as legal arguments regarding the Diozzis' defenses and alleged violations of their due process rights. Lehman consulted with Twomey throughout his preparation of the case and ultimately persuaded him to return to the case as co-counsel.

* Of the Fifth Circuit, sitting by designation.

On June 4, 1985, six days before the trial was scheduled to begin, the government filed a motion to disqualify Twomey and Lehman as defense counsel on the ground that the government intended to call them both as material witnesses at trial. Listing sixteen allegedly false or misleading statements made by the Diozzis and contained in the Twomey and Lehman submissions, the government asserted that the attorneys' testimony regarding these statements was material evidence of defendants' consciousness of guilt. Specifically, the government claimed that defense counsel's testimony was the government's best evidence of appellants' "scheme" to conceal their alleged tax fraud by making false and misleading statements through their attorneys to the IRS and the Justice Department.

The district court conducted a hearing on June 6 at which appellants offered to stipulate to those statements contained in the written submissions which the government wished to put before the jury. In a memorandum filed the same day, appellants also agreed to stipulate to the fact that the submissions were made by counsel acting under valid power of attorney. The district court nevertheless allowed the government's motion without findings or opinion.

After our denial of their petition for mandamus, appellants proceeded to file a motion for reconsideration of the disqualification, which the district court denied without hearing or opinion. The district court granted appellants' motion for a continuance, and on July 15 appellants proceeded to trial with substitute counsel. The government did call both attorneys to the stand at trial, but the district court limited the scope of direct examination to counsel's memories of the content of the written submissions and to facts contained in the power of attorney forms.[1]

## DISCUSSION

The sixth amendment right to assistance of counsel encompasses a defendant's qual-

ified right to be represented in a criminal prosecution by counsel of his or her own choice. *See e.g., Wilson v. Mintzes*, 761 F.2d 275, 279 (6th Cir.1985); *United States v. Curcio*, 694 F.2d 14, 12 (2nd Cir.1982); *United States v. Laura*, 607 F.2d 52, 53, 55–56 (3rd Cir.1979); *United States v. Poulack*, 556 F.2d 83, 86 (1st Cir.), *cert. denied*, 434 U.S. 986, 98 S.Ct. 613, 54 L.Ed.2d 480 (1977). While we have recognized that a district court has some discretion to limit the exercise of the right to counsel of choice when insistence upon it would disproportionately disadvantage the government or interfere with the ethical and orderly administration of justice, *United States v. Cortellesso*, 663 F.2d at 363, we have also warned that disqualification of defense counsel should be a measure of last resort. *In re Diozzi*, No. 85–1468, Order (1st Cir. June 28, 1985). In moving to disqualify appellants' chosen counsel, the government bears a heavy burden of establishing that disqualification is justified. *United States v. Washington*, 797 F.2d 1461, 1465 (9th Cir.1986).

The government asserts three grounds in support of the disqualification order in this case. First, the government claims that defense counsel's testimony was its best evidence of appellants' statements made through counsel to the IRS and the Justice Department, and that ethical rules require the disqualification of defense counsel who appear as sworn government witnesses. Second, the government argues that ethical rules would have dictated the disqualification of defense counsel even if they had not appeared as sworn government witnesses, for they would have been unsworn witnesses whose credibility would have been in issue at trial. Third, the government argues that appellants have not demonstrated that the disqualification of their counsel prejudiced their defense. We consider each of these grounds in turn.

### 1. Best Evidence

■ Appellants do not challenge the district court's determination that their attor-

1. The witnesses volunteered additional information (not requested by the government) on direct examination and particularly on cross examination concerning the amount of time they had spent with their clients and the method by which the submissions were prepared.

neys could not serve the dual roles of defense counsel and sworn government witnesses in the same trial. *See, e.g.*, ABA Model Code of Professional Responsibility, Disciplinary Rule 5–102(B) (1982)[2]; *United States v. Cortellesso*, 663 F.2d at 363. Rather, appellants argue that the district court erred in allowing the government to call their defense counsel as sworn witnesses when adequate alternative methods of proof existed. In *United States v. Cortellesso* we held that the government need not resort to evidence other than defense counsel testimony "if it means that the government must settle for less than its best evidence." 663 F.2d at 363. In that case, we noted that had defense counsel been willing to enter into a stipulation of relevant facts, his testimony would not have been needed, and he would have been free to continue in the case. Appellants argue that in this case, their agreement to stipulate to the contents of the written submissions and power of attorney forms eliminated the need for testimony by their defense counsel without requiring the government to settle for less than its best evidence.[3]

We have been unable to find any basis for the government's claim that a stipulation would have been less than its best evidence. Appellants had agreed to stipulate to all of the statements in the written submission that the government elicited from defense counsel on direct examination as well as to the fact that the statements were made under valid power of attorney. The rest of the information obtained through direct examination of defense counsel—the fact that counsel met with their clients and the dates of representa-

tion—could easily have been stipulated to as well.[4] Defense counsel refused to stipulate to the fact that the statements were false or misleading, but the government was equally unable to establish that fact through defense counsel's testimony.

The government's objection to the introduction of appellants' self-serving statements contained in the written submissions was met by appellants' offer to stipulate to only those statements contained in the submission that the government wanted before the jury.[5] The government's argument that the jury could have been confused or misled by the exclusion of parts of the written submission is unpersuasive: a typed stipulation would have been less confusing to the jury than defense counsel's testimony, which was constantly interrupted so that counsel could refresh their memories with written submissions that the jury was not allowed to see. Equally meritless is the government's argument that defense counsel's testimony aided the effective ascertainment of truth. The most accurate evidence of the statements contained in the written submissions was not counsel's memories of the contents of the submissions, but rather, the written submissions themselves. *See* Fed.R.Evid. 1002–07. To the extent that the government deemed oral presentation to be effective, the stipulation could have been read to the jury. While the government may have gained some tactical advantage by forcing Twomey and Lehman to appear as government witnesses rather than as advocates for the defense, the government may not infringe upon the right to counsel of choice

---

2. Disciplinary Rule 5–102(B) provides that [i]f, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

3. Appellants also contend that additional alternatives—obtaining the information through the testimony of other firsthand sources or calling only one of the defense attorneys to the stand—

would have preserved their right to counsel of choice without requiring the government to settle for less than its best evidence. We express no view as to the adequacy of these alternative methods of proof.

4. These facts are not in dispute.

5. The District Court allowed appellants to introduce related statements, contained in the submissions but not introduced by the government, under Fed.R.Evid. 106.

for such an improper purpose.[6] In sum, the government has failed to support the disqualification order on "best evidence" grounds.

## 2. Unsworn Witness Theory

■ The government further argues that ethical rules [7] would have required the disqualification of both defense counsel even if the court had prohibited the government from calling them as sworn witnesses at trial, since introduction of defendants' statements made through their attorneys—even in the form of a stipulation—would have turned defense counsel into unsworn witnesses. The government asserts that

> had Twomey and Lehman continued in the case without taking the stand, they necessarily would have framed questions to witnesses and their summation to the jury in a manner designed to show that all such statements by the defendants, through them, to the IRS and the Justice Department were true. The jury might well have interpreted these assertions as the defense attorneys' testimony ... and implicitly defense counsel would be putting their own credibility at issue. (Citations omitted.)

We have had some difficulty understanding the government's claim. Competent trial attorneys usually present their cases in a manner designed to convince juries that their clients are telling the truth. While there is always a risk that jurors will consider counsel's assertions to be testimonial, jurors are instructed that the assertions of counsel are not evidence. Defense counsel cannot be subject to disqualification merely for arguing their clients' positions on statements that are in evidence.

The government's claim that counsel's credibility would have been in issue in this case must therefore rest upon the notion that attorneys Twomey and Lehman had *personally* vouched for the truth of their clients' statements contained in the written submissions.[8] We fail to see how Twomey and Lehman, by submitting factual statements to the government under power of attorney on behalf of their clients, had vouched for the truth of those statements in a manner requiring their disqualification as trial counsel. Their submissions are no different in this respect from any pretrial memorandum, suppression motion, or trial brief filed by an attorney presenting his client's view of the facts.[9] Nor are we impressed by the fact that the Diozzis made the statements in the submissions through their attorneys before indictment. Defense counsel cannot be subject to disqualification merely for having represented their clients in a preindictment investigation. In this case, defense counsel's ex-

---

6. The notes to Disciplinary Rule 5–102(B) explain that the rule "was not designed to permit a lawyer to call opposing counsel as a witness and thereby disqualify him as counsel." Model Code of Professional Responsibility, at 30 n. 30.

7. *See, e.g.,* ABA Model Code of Professional Responsibility, Disciplinary Rule 5–102(A) & 5–101(B) (1982):

    If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue presentation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify ... if the testimony will relate solely to an uncontested matter.

    *See also* Disciplinary Rule 5–102(B), *supra,* at note 2.

8. We note preliminarily that any perceived "unsworn witness" problem could have been eliminated by redacting the attorneys' names from the written stipulation or by specifically instructing the jury that the attorneys may not vouch for the truth of their clients' statements. These options were not raised below, and we do not fault the district court for failing to consider them *sua sponte.*

9. All attorneys are of course subject to the ethical prohibition against *knowingly* making false statements of law or fact in the course of representing a client. ABA Model Code of Professional Responsibility, Disciplinary Rule 7–102(5). But no precedent has been brought to our attention for the proposition that an attorney representing a client endangers his or her own credibility more by filing a document with the IRS under power of attorney than by filing a motion, memorandum, or brief with a court.

press or implied arguments at trial regarding appellants' statements would have been no more testimonial than any other lawyer's examination of witnesses or summation to a jury.[10]

The government argues that the unsworn witness problem in this case is best illustrated by substitute defense counsel DiMento's closing arguments to the jury regarding the preparation of the 1978 tax return. The government's characterization of the problem is as follows:

> The defendants stated that Richard, with Diane's assistance, prepared the return, struggling over several days to research IRS publications and to compute the investment tax credit. Franz's testimony and circumstantial evidence in the case showed this statement to be false or purposely misleading to the Government tax authorities. In his closing Mr. DiMento attacked Franz's credibility, suggesting that Franz prepared the entire 1978 return and was lying to say he did not. This implicitly impugned the defendants' statement that they prepared the 1978 return. Attorney DiMento obviously determined it was more important to undercut Franz's credibility. Ethically, Attorneys Twomey and Lehman could not have done this; by taking this tack, they would have been putting their own credibility in question.

We note first that the example is not as clear as the government suggests. Attorney DiMento argued that the 1978 tax return was typed, or "done," in accountant Franz's office. This is a far cry from directly impugning the statements in the submissions—and the consistent testimony of Twomey, Lehman, and Franz—that appellants were the primary preparers of the critical return.

More importantly, it is clear to us that if, during the course of trial, the defense had uncovered evidence tending to implicate Franz, attorneys Twomey and Lehman, had they remained in the case, would have been as free to take advantage of this development as DiMento was. To the extent that a shift in strategy would have contradicted appellants' statements in the written submissions, appellants' credibility, not counsel's, would have been in issue. Thus, the government's "unsworn witness" theory, like its "best evidence" argument, falls far short of justifying the disqualification of defense counsel in this case.

### 3. Prejudice

■ Finally, the government argues that "defendants have failed to show prejudice, and without this, the scales favored the Government's right to call Attorneys Twomey and Lehman to the stand." Having just concluded that the government's side of the scale was empty, we now reject the claim that appellants had the burden of tipping the balance on the government's disqualification motion.

We are well aware of our own cases suggesting that the defense must demonstrate prejudice to prove that a denial of a defense motion amounted to a sixth amendment violation. *See United States v. Allen*, 789 F.2d 90 (1st Cir.), *cert. denied*, — U.S. ——, 107 S.Ct. 164, 93 L.Ed.2d 103 (1986); *United States v. Poulack*, 556 F.2d 83 (1st Cir.), *cert. denied*, 434 U.S. 986, 98 S.Ct. 613, 54 L.Ed.2d 480 (1977). These cases are based upon the proposition that when the *defense* seeks to disrupt or delay

---

**10.** This conclusion is not inconsistent with the Second Circuit rule that a defense counsel who implicitly interprets his own pretrial statements or conversations becomes an unsworn witness whose credibility is in issue. *See e.g., United States v. Kwang Fu Peng*, 766 F.2d 82 (2d Cir. 1982) (Defense counsel was disqualified after counsel's cross-examination of a government witness plainly showed that counsel was a participant in an allegedly fraudulent event and was implicitly testifying as to his version of the event.); *United States v. McKeon*, 738 F.2d 26 (2d Cir.1984) (Defense counsel may not argue the credibility of defendant's testimony about material conversations between counsel and defendant in order to explain counsel's apparently inconsistent statements which were in evidence.); *United States v. Cunningham*, 672 F.2d 1064 (2d Cir.1982) (Defense counsel's credibility would have become an issue if his secretary were allowed to testify for the government regarding defense counsel's statements to her suggesting that he knew the location of "missing" items subpoenaed by the government.)

proceedings by a request for substitute counsel or for a continuance, the requested disruption must be justified. The *defense* bears the burden of proving that its interest in a chosen counsel is more compelling than the public's interest in the efficient administration of criminal justice. It does this by pointing to some demonstrable disadvantage suffered by denial of its request. In this situation the government has two chances to defeat the defense's motion: it may be able to show a wholly inadequate basis for requesting new counsel, but, even if it cannot, it may win by the failure of defendant to show prejudice.

When, however, it is the *government* that seeks to disturb the planned proceedings by moving to disqualify defense counsel, it has only one arrow in its quiver. It must demonstrate that any infringement on choice of counsel is justified. It cannot expect to prevail by saying, in effect, "The court should grant our motion because even though we have not demonstrated a sufficient need for disqualification, no harm will have been done if competent substitute counsel are appointed and given enough time to prepare their defense." Such an approach would entirely eviscerate a defendant's right to counsel of choice. Moreover, such an approach would be at odds with the Supreme Court's reasoning in *United States v. Flanagan* that the sixth amendment right to counsel of choice "reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceedings." 465 U.S. 259, 268–69, 104 S.Ct. 1051, 1056–57, 79 L.Ed.2d 888 (1984).[11] The Court observed that like the right to represent oneself, the right to choose one's own defense counsel is "either respected or

denied; its deprivation cannot be harmless." 465 U.S. at 269, quoting *McKaskle v. Wiggins,* 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 951 n. 8, 79 L.Ed.2d 122 (1984).

In this case, the government has failed to justify the disqualification of appellants' chosen counsel. We therefore hold that the disqualification order, regardless of its impact on the actual outcome of the case, is constitutional error requiring us to set aside appellants' convictions.

*We vacate the judgment, set aside the jury verdict, and remand the case to the district court for proceedings not inconsistent with this opinion.*

---

**11.** While the above-quoted language suggests that a violation of the sixth amendment right to counsel of choice would require reversal regardless of prejudice, the Supreme Court did not need to decide this issue in *Flanagan.* The defendants in that case asserted a right to joint representation based upon both their sixth amendment right to counsel of choice and upon their fifth amendment due process right. The Court concluded that whatever the basis of the claim, the disqualification order was not immediately appealable.

The Supreme Court has never held that prejudice is a prerequisite to reversal of a conviction for violation of the sixth amendment right to counsel of choice. *See Richardson-Merrell, Inc. v. Koller,* 472 U.S. 424, 105 S.Ct. 2757, 2765, 86 L.Ed.2d 340 (1985); *see also Id.* at 2767 (Stevens, J., dissenting on other grounds) ("in a criminal case an erroneous order disqualifying the lawyer chosen by the defendant should result in a virtually automatic reversal.")