**UNITED STATES of America, Appellee,**

v.

**Carl HALLOCK, Defendant, Appellant.**

**No. 90–2099.**

United States Court of Appeals,
First Circuit.

Heard March 6, 1991.
Decided Aug. 6, 1991.

Richard Abbott with whom Jeffrey A. Denner and Denner & Associates were on brief, Newton, Mass., for defendant, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., and Nicholas M. Gess, Asst. U.S. Atty., were on brief, Portland, Me., for U.S.

Before CAMPBELL, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Carl Hallock appeals from his August 14, 1990 conviction after a jury trial in the district court for conspiracy and possession of cocaine with intent to distribute. Hallock alleges errors in the pretrial proceedings and at trial and claims that, at different stages in the prosecution, he was denied both the right to effective assistance of counsel and the right to counsel of choice. We reject the claims of error, decline to consider the ineffective assistance of counsel claim, and find that defendant waived the counsel of choice claim.

### I.

On February 14, 1990, a two-count indictment was returned against Carl Hallock. The first count charged that "[i]n or about 1988, in the District of Maine and elsewhere" Hallock had conspired with James M. Hudson, Daniel R. Letorneau, Thomas H. Johnston, Joel J. Burns and with other unnamed parties to knowingly possess with intent to distribute and to distribute cocaine in excess of five hundred grams in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 846. The second count charged that "[i]n or about October 1988, in the District of Maine" Hallock had knowingly possessed with intent to distribute ten to twelve ounces of cocaine and had aided and abetted such possession.

On March 1, 1990, Hallock moved for a bill of particulars. With respect to Count I, charging conspiracy, the motion sought specification of the illegal acts alleged to have been undertaken by the defendant, the individuals with whom they occurred, and their location and date or dates. With respect to Count II, the motion sought the location and specific date of the alleged possession.

On March 14, 1990, the grand jury returned a three-count superseding indictment. This indictment retained Count I in its original form, added to Count II the name, Daniel Letorneau, as the person Hallock had aided and abetted, and added a new third count charging Hallock with possession of approximately six ounces of cocaine with intent to distribute in "the Spring of 1989, in the District of Maine," and with aiding and abetting Richard Hudson to do the same. No new motion for particulars was filed, nor was the old one renewed, with reference to the superseding indictment. On April 17 the court denied the original motion for particulars, stating that the indictment, without specifying which, was "sufficient."

On May 10, 1990, Hallock's then attorney, Neil Shankman, filed a motion *in limine* informing the court of defendant's "understanding" that the government would be calling Hallock's former wife, Ethel, who had provided the government with a number of statements including a list of alleged buyers and sellers in the drug community. Among others, the motion alleged, Shankman himself had been named by Ethel as a buyer. The motion did not seek to exclude or suppress Mrs. Hallock's testimony; instead it sought a ruling on the admissibility of evidence to impeach Mrs. Hallock, such evidence to consist, apparently, of calling certain witnesses whose names appeared on Mrs. Hallock's alleged list, who would deny they had bought drugs from defendant. According to the motion, if such evidence were admissible, then Shankman would become a potential witness for the defense and would have to withdraw from representation of Hallock. The government, in its response to the motion, stated that it "may well proffer the testimony of Ethel Hallock at trial," and that, apart from whether or not the court allowed the calling of impeachment witnesses, it was "readily apparent" that Mrs. Hallock's testimony would place Shankman in an untenable position, necessitating his immediate withdrawal. By the end of May, having sought and located substitute counsel, Shankman voluntarily withdrew from the case. At no time did Shankman object to withdrawing nor claim that his withdrawal would deny to Hallock the counsel of his choice.[1] The defendant's new attorney, Robert Goodrich, entered an appearance on May 30. Postponed to accommodate Goodrich's schedule, the trial took place approximately a month and a half after the date originally set. Mrs. Hallock was never called as a witness, and no evidence concerning Hallock's alleged drug sales to Shankman was presented. Goodrich never protested that Shankman had, in some sense, been forced to withdraw.

The testimony at trial centered on meetings and phone conversations between Hallock and his alleged coconspirators.

---

1. In an order of July 31, 1990, the court noted that while it was "not in the business of giving advisory opinions, we note that the potential problem created by the proffered testimony of Ethel Hallock mandates that Mr. Shankman withdraw as attorney for the defendant."

Government witness James Hudson testified that, during the fall of 1988, Hudson had stored cocaine in a safe at Hallock's auto body shop in Auburn, Maine, and that on several occasions he had instructed Hallock to turn over varying quantities of cocaine to Daniel Letorneau. This testimony was corroborated by Letorneau, who testified that on two occasions he picked up cocaine directly from Hallock at the body shop. Hudson also testified that Hallock, acting on Hudson's instructions later in 1988, had turned over $88,000 to Joel Burns and Thomas Johnston, and then allowed Hudson to store the cocaine purchased with the money in the safe in Hallock's shop. Burns testified that he had participated in a cocaine transaction with Hudson in an auto body shop in the Auburn–Lewiston area. Although unable to identify Hallock, he testified that a man had come out of the shop and handed him a paper bag containing $88,000. Finally, Hudson's nephew Richard Hudson testified that, on three occasions in April, 1989, Hallock had bought or attempted to buy from him several ounces of cocaine which he intended to distribute to two brothers named Clark. All three of these transactions took place in the body shop.

The defense relied largely on Hallock's own testimony. Hallock testified that he had known James Hudson for twenty years, that he knew Hudson sold drugs, and that he (Hallock) had used cocaine himself and given small amounts to friends. Hallock also stated that he allowed several people, including both Hudsons, to use his body shop, but denied any knowledge of their use of his shop to sell cocaine, or any complicity on his part. He admitted to having seen Letorneau in his shop, testifying that Letorneau came in one day to pick up a gym bag left there earlier by James Hudson. Hallock also admitted that he had

allowed James Hudson to store money in his safe, but claimed to have had no idea of the amount or that it came from drug sales. Finally, he denied that the drug deals with Richard Hudson ever took place, but admitted to having used cocaine with one of the Clark brothers. The defense also called Hallock's former secretary, Mildred Whitingham, who testified that she had access to the safe and spent some time in the body shop, but had no knowledge of any cocaine trafficking.

At the conclusion of the trial, the judge instructed the jury on all three counts. After deliberating for two hours, the jury asked for a definition of the word "possess." The judge responded with a definition, to which the defense did not object, focussing largely on the concept of constructive possession. Forty-five minutes later the jury returned a verdict of guilty on all three counts.

On appeal, Hallock alleges four grounds for reversal of his conviction: that the denial of the bill of particulars constituted reversible error, that the second jury charge constituted reversible error, that his representation by attorney Goodrich was ineffective, and that the withdrawal of his first attorney, Shankman, deprived him of the right to counsel of his choice. We reject the first two claims, decline to consider the third, and find the fourth to have been waived.

## II.

### A. THE MOTION FOR PARTICULARS

██ Hallock claims that the district court erred in denying his motion for a bill of particulars filed prior to the superseding indictment. He argues that his preparation of a defense was impaired by denial of the motion.[2] His argument centers entirely on the conspiracy count, which he alleges set

---

2. The appellant's brief alternates between arguing that the court erred in failing to grant the bill of particulars and that the indictment was impermissibly vague. The two claims are closely related, since there is no need to grant a bill of particulars when the indictment is sufficiently specific. *United States v. Paiva,* 892 F.2d 148, 154–55 (1st Cir.1989). As we find the indictment was sufficiently specific so that it was not

error to deny the motion for a bill of particulars, the indictment was *a fortiori* not impermissibly vague. We add that appellant never moved to dismiss the indictment; thus, in order to reverse for vagueness of the indictment, we would have to find "plain error." *United States v. Murphy,* 762 F.2d 1151, 1155 (1st Cir.1985). There was clearly no plain error.

forth an impermissibly indefinite date and place ("In or about 1988, in the District of Maine and elsewhere") and failed to identify some of the alleged coconspirators. He then goes on to argue that, had the conspiracy count been excluded from the indictment, he might not have been convicted on the possession counts. We address these contentions on the premise, arguendo, that Hallock's original motion for particulars, which was never renewed after the superseding indictment was handed down, sufficiently implicated the latter.

■■■ A bill of particulars serves three purposes: to give the accused details concerning the charges against him, enabling him to prepare a defense; to prevent double jeopardy; and to avoid surprise at trial. *United States v. Leach,* 427 F.2d 1107, 1110 (1st Cir.), *cert. denied,* 400 U.S. 829, 91 S.Ct. 95, 27 L.Ed.2d 59 (1970). Whether to grant a bill of particulars is left to the sound discretion of the district judge, *Will v. United States,* 389 U.S. 90, 98–99, 88 S.Ct. 269, 275–76, 19 L.Ed.2d 305 (1967), whose decision will be reversed only for abuse of discretion. *United States v. Paiva,* 892 F.2d 148 (1st Cir.1989) (citing *Wong Tai v. United States,* 273 U.S. 77, 82, 47 S.Ct. 300, 302, 71 L.Ed. 545 (1927)). To establish an abuse of discretion, "a defendant must demonstrate actual surprise at trial or actual prejudice to his substantial rights." *Paiva,* 892 F.2d at 154.

Hallock's argument that it was error to deny the bill of particulars relative to the conspiracy count relies almost exclusively on this court's decision in *United States v. Tomasetta,* 429 F.2d 978 (1st Cir.1970). In *Tomasetta* we held to be impermissibly vague a loan sharking indictment which alleged only that the defendant had, "on or about June 10, 1969, at Worcester" extorted the collection of a debt. *Id.* at 979 n. 1. The indictment failed to specify the name of the victim, the means of the alleged extortion, or the precise location. We noted that while no single factor was determinative, the three omissions, taken together, made it difficult for the defendant to determine exactly what conduct of his had given rise to a charge of extortion. *Id.* at 980–

81. Hallock asserts that the indictment on Count I is impermissibly vague because it is even less specific as to date and place than the indictment in *Tomasetta.* Whereas the *Tomasetta* indictment set forth a specific day and city, Hallock's indictment provided only a year and state. Hallock also argues that the indictment is defective because it named only the four principal coconspirators.

■■■ *Tomasetta,* did not, however, establish an inflexible floor of information required for a valid indictment. On the contrary, we stated therein that "arbitrary rules as to the necessity ... of a given averment have no place in the analysis, as the question is whether the indictment as a whole conveys sufficient information to properly identify" the allegedly unlawful conduct. *Id.* at 979. In the situation existing in *Tomasetta* precise averments as to the date and location of the crime were necessary because the defendant was accused of an isolated criminal act (extortion in collecting a debt) against an unnamed victim. He had no way of knowing which of potentially several contacts on the date in question gave rise to the alleged offense. The alleged crime here was not, however, a single transaction but a conspiracy to possess and distribute drugs. Unlike the defendant in *Tomasetta,* Hallock was given the most relevant names—not, in this case, of the victim, but of his coconspirators. By informing Hallock that he was accused of a conspiracy in 1988, in Maine, to distribute cocaine and by listing the names of the four principal coconspirators, the indictment gave Hallock significant information as to the conduct out of which the indictment arose—namely, his alleged agreement and relationship with these four men aimed at distributing cocaine. Moreover, a conspiracy does not normally occur at only one particular time or place; it often takes shape and is carried out over a period of time, frequently in various locales. A conspiracy may include several overt acts, but, as the government is not required to prove any of the particular acts constituting the conspiracy, *United States v. Williams,* 809 F.2d 75, 80 (1st Cir.1986), *cert. denied,* 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 377

(1987), the absence of a statement of the precise dates and locations of such acts does not necessarily render the indictment impermissibly vague.

More analogous to this case than *Tomasetta* is *United States v. Paiva*, 892 F.2d 148 (1st Cir.1989). There the defendant argued, as Hallock does here, that an indictment for conspiracy to possess cocaine with intent to distribute was invalid for vagueness. The defendant argued that the indictment was invalid because it failed to specify precise dates of the conspiracy, a location more specific than the District of Maine, or the names of all coconspirators. *Id.* at 153–55. We rejected the defendant's claim, particularly because of his failure to demonstrate any "actual prejudice or surprise at trial." *Id.* at 155.

Hallock has likewise failed to show prejudice or surprise. While the record is not clear as to the specifics of discovery, it is clear that discovery took place in advance of trial. Defendant does not argue that prior to trial he was unaware of the basics of the government's case. Furthermore, there is nothing to indicate defense surprise at trial, either by the government's general proof that Hallock distributed cocaine through his body shop, making special use of the safe, or by prosecution evidence of specific acts. The government's case centered around six cocaine transactions, all of which took place in Hallock's shop. Two involved pickups by Daniel Letorneau, one involved James Hudson and two other men, in which Hudson stored money in Hallock's safe, and three involved cocaine transactions between Hallock and Richard Hudson, wherein Hallock planned to distribute cocaine to the Clark brothers. Hallock appeared to be adequately prepared to defend against this evidence. He sought to discredit the government's witnesses and he provided a contrary account of the incidents in question. His attorney vigorously cross-examined the government witnesses concerning their motives to testify. Hallock himself testified that Letorneau had come by the shop once to pick up a gym bag, the contents of which he was unaware, that he had stored money for James Hudson once but did not know it came from cocaine sales, and that he had used cocaine with one of the Clark brothers, but had not bought cocaine from Richard Hudson for them. In addition, Hallock testified generally that he allowed both Hudsons to use his shop to work on their cars, but not to distribute cocaine. Finally, Ms. Whitingham testified, as a defense witness, that she had no knowledge of drug trafficking at the body shop. Hallock's problem appears not to have been that he was unable to prepare to meet the government's case, but that the jury simply did not believe his story.

Hallock also contends that he was prejudiced and surprised by the indictment's failure to list all of his coconspirators. The only person not listed in Count I with whom, according to the proof at trial, Hallock conspired, was Richard Hudson. However, Hudson's name was listed in Count III of the superseding indictment as a party aided and abetted by Hallock in a specific drug activity.[3] We are satisfied that the indictment contained enough information to inform Hallock of the criminal conduct in which he was alleged to have engaged, and that he was not prejudiced or surprised by any of the alleged deficiencies. As the indictment was not impermissibly vague, the district court acted within its discretion in refusing to order a bill of particulars.[4]

## B. THE JURY INSTRUCTIONS

In response to a jury question two hours into the deliberations, the judge gave the following definition of possession:

---

**3.** The superseding indictment was filed before the court ruled on the bill of particulars.

**4.** Hallock makes two additional arguments that are premised on the vagueness of the indictment. First, he argues that the possession convictions were tainted by the inclusion of the conspiracy count in the indictment. Second, his brief makes passing mention of an argument that the indictment's vagueness necessitated a jury instruction concerning conspiracy, which was denied. Because we find that the indictment was not impermissibly vague, we reject these arguments.

If two persons have physical possession of a thing, they have joint actual possession, they can also have it constructively if they both in some way have the control or dominion over that property.... [I]f you find that the defendant had the drugs on his person, you may find he had possession of the drugs; however, a person need not have physical custody of an object in order to have actual or constructive possession of it. Even if he has the ability to exercise substantial control over an object that he does not have physical control of, then he is in possession of that item.

Citing cases where constructive possession has been defined as the power to exercise control over an object, together with knowledge of that power and the intention to exercise it, *see, e.g., United States v. Ladd,* 877 F.2d 1083, 1087 (1st Cir.1989), the defendant argues that this instruction constituted error because it omitted the knowledge and intent elements. Because Hallock admitted to transactions in his shop with James Hudson and Letorneau, claiming that he did not know cocaine was involved, he argues that this error was serious enough to be reversible. In short, defendant argues, the instruction allowed the jury to find constructive possession of cocaine upon finding that the drug was in Hallock's shop, without requiring the jury to find that he knew it was there.

█ It should be noted that proof of possession was not an element of the conspiracy count. *United States v. Latham,* 874 F.2d 852, 863 (1st Cir.1989). Thus, the omission of reference to knowledge and intent in explaining possession could not have affected Count I, charging conspiracy, as to which the intent element was separately explained. *See infra.* Furthermore, as the defendant concedes, his failure to object to the charge at trial requires that we reverse only upon a showing of "plain error." *United States v. de la Cruz,* 902 F.2d 121, 122 (1st Cir.1990). That is a difficult showing to make. Plain errors are "those errors so shocking that they seriously affect the fundamental fairness and basic integrity of the proceedings conducted below.... [S]uch errors are to be noticed only in 'exceptional cases or under peculiar circumstances to prevent a clear miscarriage of justice.'" *United States v. Griffin,* 818 F.2d 97, 100 (1st Cir.), *cert. denied,* 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987) (quoting *Nimrod v. Sylvester,* 369 F.2d 870, 873 (1st Cir.1966)). *See also United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985). Additionally, whatever the standard of review, jury instructions are to be examined, not in isolation, but "in the context of the charge as a whole." *United States v. Boylan,* 898 F.2d 230, 244 (1st Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990).

█ In this light, Hallock's claim plainly fails. Even assuming, for purposes of argument, that the definition, in this context, can be labelled erroneous, it clearly did not affect the fundamental fairness of the proceedings. The part of the instruction cited by Hallock is merely several lines from a set of instructions that fills up twenty-six pages in the record. The court elsewhere made abundantly clear to the jury that proof of the defendant's knowledge and intent was required to convict. The original charge informed the jury that, to convict on the possession with intent to distribute counts, it had to find "that the defendant did so knowingly and intentionally." Later, in describing the elements of the offense underlying the conspiracy count, the judge explained that "[t]he purpose of adding the word ['] knowingly ['] is to insure that no one will be convicted for an act done because of mistake or accident, or other innocent reason." Finally, in informing the jury of the method of assessing intent, the judge reminded it that "intent is essential in these cases, it is an element of proof."

Hallock points out that the allegedly erroneous charge came second, in response to the jury's questions. He argues that the jury must, as a consequence, have applied the second charge, disregarding the first. However this argument ignores that, in answering the jury's questions, the judge continued to emphasize that intent was an

element of the crimes charged, even if he did not include intent expressly within the constructive possession definition. In answering the possession question, the judge added to his possession definition "you must find out whether the defendant possessed the drug with *intent* to distribute." (Emphasis added). Furthermore, in answering a question on the conspiracy count, he stated that "[i]t must be shown beyond a reasonable doubt that the defendant *intentionally* joined in the agreement." (Emphasis added).

Hallock's argument also ignores the nature of the crime with which he was charged. In directing his entire argument at alleged error in the definition of "possession," the defendant forgets that he was charged not with simple possession, but possession with intent to distribute. The defendant does not contend that the jury misunderstood the "intent to distribute" part of the crime; he alleges only that it thought it could find constructive possession without finding that Hallock knew he possessed the cocaine. Thus, Hallock's argument is that the jury found he possessed gym bags and other containers without knowing they contained cocaine, but went on to find that he intended to distribute the cocaine that was in them.[5] No reasonable jury could make such a finding, and thus the instruction, even if erroneous, did not affect the fundamental fairness of the trial.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

 Hallock's third argument, raised for the first time on appeal, is that the performance of his second attorney Goodrich deprived him of the right to effective assistance of counsel. We normally do not consider such claims on direct appeal where, as is often the case, they were not first presented to the district court. *United States v. Latorre*, 922 F.2d 1, 9 (1st Cir.1990); *United States v. Sanchez*, 917

F.2d 607, 612 (1st Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1625, 113 L.Ed.2d 722 (1991); *United States v. Paz Uribe,* 891 F.2d 396, 398 (1st Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 2216, 109 L.Ed.2d 542 (1990). We have pointed out that "the reviewing court benefits from careful preliminary consideration by the trial judge, who is better situated to appraise defense counsel's representation.... [, and that] 'ineffective assistance' claims normally require 'the resolution of factual issues as well as inquiries into other evidentiary matters that cannot effectively be handled for the first time by a court of appeals.'" *Sanchez,* 917 F.2d at 613 (quoting *United States v. Costa,* 890 F.2d 480, 483 (1st Cir.1989)) (citations omitted). It follows that ineffective assistance claims must usually await habeas procedures.

To be sure, "some ineffective assistance claims might be capable of presentation solely on the record of the criminal trial." *Brien v. United States,* 695 F.2d 10, 13 (1st Cir.1982); *United States v. Natanel,* 938 F.2d 302, 309 (1st Cir.1991). But this is not the exceptional case. Hallock's first contention of attorney error is that Goodrich failed to make the pretrial investigation necessary to use certain tax records and plea agreements to impeach the government's witnesses. None of these documents are included in the record, however. We, therefore, have no way of knowing what the records and agreements contained nor whether the failure to examine them, such as it was, could have constituted attorney error. Nor are we in a position to evaluate Hallock's second argument, that Goodrich erred by putting him on the stand, since, unlike the district judge, we did not observe his testimony. Although we can evaluate Hallock's third argument, that Goodrich erred by not moving to dismiss the indictment for vagueness, we have already held that the indictment was not in fact impermissibly vague. *See supra* part II. A. Thus, we decline to consider Hal-

---

**5.** The illogic of this position is further illustrated by the jury's conviction on the conspiracy Count. In order to accept Hallock's claim, we would have to believe that the jury could have found that he agreed with James Hudson, Letor-

neau and others to possess cocaine with intent to distribute, even though it had found that he did not know his transactions with them on the dates in question involved cocaine.

lock's claims of attorney error on direct appeal.

## D. DENIAL OF THE RIGHT TO COUNSEL OF CHOICE

Hallock's final argument is that the withdrawal of attorney Shankman deprived him of the right to be represented by counsel of his choice. Because this claim was not presented in any respect to the district court, we hold that it was waived.

▇▇▇▇ The Sixth Amendment right to counsel includes the right to representation by counsel of choice, but with certain limitations. *United States v. Diozzi*, 807 F.2d 10, 12 (1st Cir.1986); *United States v. Poulack*, 556 F.2d 83, 86 (1st Cir.), *cert. denied*, 434 U.S. 986, 98 S.Ct. 613, 54 L.Ed.2d 480 (1977). The right to counsel of choice may be limited if a defendant's selection of counsel interferes with the orderly administration of justice. *Diozzi*, 807 F.2d at 12; *Poulack*, 556 F.2d at 86. For example, a defendant has no right to representation by a particular attorney when such representation would require undue delay, *Poulack*, 556 F.2d at 86, or create a conflict of interest. *United States v. Defazio*, 899 F.2d 626, 629 (7th Cir.1990).

▇▇▇▇ There is a similar limitation on the right to counsel of choice where the government calls the defendant's attorney as a witness. Since the attorney's appearance as a witness for the government ordinarily requires his withdrawal from the case, *see* ABA Model Code of Professional Conduct DR 5–102(B); Maine Bar Rule 3.5(b)(1), the government's need to present its case may in some instances outweigh the defendant's right to his attorney of choice. *United States v. Cortellesso*, 663 F.2d 361, 363 (1st Cir.1981). To assess the defendant's rights against those of the government this court has developed a "best evidence" test. *Id.* Where the government's proffer of a defense attorney's testimony will force the attorney's removal, the government may only call the attorney as a witness if, without his or her testimony, "the government must settle for less than its best evidence." *Id.*

Applying this test, we have upheld the government's right to call the attorney in certain circumstances, forcing the defendant to forego his attorney of choice. *Cortellesso*, 663 F.2d at 362–63. In another case, however, we reversed the district court's removal of two defense attorneys where the government insisted upon their testimony as to false statements in their clients' tax filings, because the defense had offered to stipulate to the filings' content, and the filings themselves were available. *Diozzi*, 807 F.2d at 11–14. We stated in *Diozzi* that gaining a tactical advantage is not a proper purpose for calling defense counsel as a witness. *Id.* at 13–14.

▇▇▇ The present case differs from the above in that the government never proposed to call Attorney Shankman as its witness. Rather it indicated only that it might present evidence implicating Shankman, making it likely the defense would want to call him in rebuttal. Assuming, without deciding, that the defense could have challenged the government's right to present evidence implicating Shankman on "best evidence" grounds similar to those discussed in *Diozzi* and *Cortellesso*, the fact is that no such challenge was ever attempted. Instead of moving to exclude Mrs. Ethel Hallock's testimony in whole or in part, and thereby to retain Mr. Shankman as his attorney of choice, Hallock unhesitatingly, and without complaint, engaged a new attorney. In the circumstances, the court had no way of knowing that defendant's change of attorneys was other than a voluntary move. Hallock's "motion *in limine*", despite its title, cannot be construed as having sought suppression of the government's evidence. That motion only asked for guidance as to whether evidence to impeach Mrs. Hallock's testimony would be allowed, and informed the court that, if so, Shankman would withdraw. At no point was it ever suggested to the court that Hallock believed he was being unfairly coerced into giving up the counsel of his choice.

Another moment when Hallock could have objected arose later during the trial, after it became clear the government was

not going to call Mrs. Hallock at all. Defendant might have complained at this time that the government's failure to present the evidence that necessitated Shankman's withdrawal demonstrated that it had raised the issue in bad faith, solely to deprive defendant of his counsel of choice. No such contention was made, however. As a result, the court naturally made no inquiry, leaving the record silent on the government's reason for failing to call Mrs. Hallock. Insofar as can now be ascertained, the government may have had a perfectly legitimate reason for not calling Mrs. Hallock. Moreover, it is entirely possible that Attorney Shankman would have withdrawn in any event, given a natural concern over personal identification with his client's misdeeds. By failing to raise the issue in the district court, where a factual basis could have then been developed, defendant rendered it impossible for us to deal meaningfully with his eleventh hour contention that he was wrongfully deprived of the counsel of his choice. The merits of any such claim necessarily depended on facts, now missing, that the district court could have assembled once timely alerted to the claim. It is pure speculation at this juncture whether Shankman would have withdrawn in any event, and whether the government's threat to call Mrs. Hallock, and its subsequent failure to do so, were or were not justified. Defendant's complete failure to raise the matter below constituted a waiver of his right to pursue it now. *Compare United States v. Costa*, 890 F.2d 480, 482 (1st Cir.1989) (defendants may not sandbag district court by remaining silent and gambling on a favorable verdict, knowing if verdict went against them they could seek a new trial).

*Affirmed.*