**In re SEALED GRAND JURY SUBPOENAS.**

**Case Nos. 1:11mc18, 1:11mc19.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Sept. 9, 2011.

Zachary T. Lee, United States Attorneys Office, Abingdon, VA, for Plaintiff.

## MEMORANDUM OPINION

PAMELA MEADE SARGENT, United States Magistrate Judge.

These grand jury matters are before the undersigned on the court's show cause orders directed to a District of Columbia psychiatrist and his practice, the motions of a the psychiatrist and his practice to vacate or modify these orders and the motions of the Government for the court to set out procedures for review of subpoenaed medical records to protect privileged material. Based on the arguments and representations of counsel, the court will vacate the show cause orders and order the production of the subpoenaed records.

### I. Facts and Procedural Background

Earlier this year, this court issued subpoenas to testify before the grand jury to a Washington, D.C., psychiatrist, and to the custodian of records for his practice, also located in Washington, D.C. The witnesses were subpoenaed to appear before the grand jury in the Abingdon Division of the Western District of Virginia. The subpoenas also required the witnesses to bring the following patient records for 252 [1] named individuals and for each other patient to whom the psychiatrist had prescribed a Schedule II controlled substance

---

1. The copy provided to the court of the grand jury subpoena served on the psychiatrist lists only 187 individual patients by name, but it appears the last page of the list of names has simply not been provided to the court. The entire list of 194 patients is attached to the copy provided to the court of the grand jury subpoena served on the practice. A second list of 58 additional individual patient names was attached to the grand jury subpoena served on the practice. The psychiatrist asserts that the patient files for 194 of these individuals were seized by the Government in searches of his residence and office.

at any time between December 31, 2008, and March 4, 2011: "all patient medical records and billing records including, but not limited to, claim forms, operative reports, charts and histories, test results, x-rays, billing statements, appointment logs, patient assessments and evaluations, patient consents, patient referral forms, prescription files, copies of prescriptions, payment receipts, insurance records, correspondence, explanation of benefits forms, and patient progress notes." In lieu of appearance, the subpoenas allowed the witnesses to provide the requested documents along with certificates of authenticity of business records to the U.S. Attorney's Office by a date earlier than the grand jury appearance date.

The Government subsequently moved the court to issue show cause orders against the psychiatrist and the records custodian based on their failure to either appear or produce the requested records. In its motions, the Government admitted that it had received a packet containing some responsive documents by overnight delivery on the date of the scheduled grand jury appearance. Many of the documents produced had information such as patient names redacted. The packet also contained a letter from counsel representing the psychiatrist. This letter stated that many responsive documents were not being provided to the Government because the psychiatrist asserted that they were protected from production under the federal psychotherapist-patient privilege or the District of Columbia physician-patient privilege. The letter also stated that many of the responsive documents had been seized by the Government during the execution of search warrants recently on the psychiatrist's residence and office. The letter further stated that additional documents would be produced on a rolling basis over the course of the next several weeks and that a privilege log would be provided at the conclusion of the production.

The court granted the Government's motions and issued show cause orders ordering the psychiatrist and a representative of the practice to appear before the court to show cause why they should not be held in contempt for failing to comply with the grand jury subpoenas. Subsequently, the psychiatrist and his practice moved the court to vacate or modify these show cause orders. A hearing on the show cause orders and motions to vacate or modify was held. At this hearing, counsel for the psychiatrist and his practice requested the court delay its ruling pending a decision from the D.C. District Court regarding the scope of the privilege issue raised in a motion to return the patient records seized in the searches of the psychiatrist's residence and office. The court denied this motion, but granted counsel additional time and set another hearing on the show cause orders and motions to vacate or modify.

At this hearing, the parties asked the court to delay ruling. The parties sought the delay to allow the parties time to negotiate an agreed procedure for review by a "filter team" to determine which of the seized records were protected from disclosure by privilege. The court set deadlines by which each party would file a proposal with the court and scheduled another hearing.

Prior to this hearing, the Government filed motions seeking a determination from the court as to the proper procedures to be established for review of the subpoenaed and seized records to protect privileged material. The motions seek to establish a "filter team" not involved in the underlying grand jury investigation in the Western District of Virginia to review the subpoenaed and seized documents to protect from

production those records covered by the federal psychotherapist-patient privilege.

At the hearing, counsel informed the court that the D.C. District Court had decided to defer its decision pending resolution of the privilege issue in this court. According to counsel, the parties had reached no agreement on the scope of the applicable privilege at issue. The parties also disagreed as to the procedure to be put in place to review the seized documents for privileged materials. The parties asked this court to determine what, if any, privilege applied to the records sought and what procedure should be used to ensure that any privileged records were adequately protected. The Government also announced that it was willing to narrow the scope of the subpoenas to seek the records of only those patients specifically named in the subpoenas, all of whom, pharmacy records reflect, were prescribed Schedule II controlled substances by the psychiatrist. The Government also represents that each of these named patients either resides in the Western District of Virginia or had prescriptions from this psychiatrist filled at a pharmacy located in the Western District of Virginia.

Further, the Government submitted the affidavit attached to the applications for the warrants to search the psychiatrist's residence and office for in camera ex parte review by the court. While the court is unable to detail the facts set forth in this affidavit without jeopardizing the ongoing criminal investigation, suffice it to say that a federal magistrate found that this affidavit set forth adequate probable cause that violations of 21 U.S.C. §§ 841(a)(1) and 846 of the Controlled Substance Act had occurred and that evidence of those crimes could be found in the psychiatrist's residence and office. In particular, the search warrants provided for the seizure of the "[p]atient medical records and billing files . . . to include, but not limited to, claim forms, operative reports, charts and histories, test results, x-rays, billing statements, appointment logs, patient assessments and evaluations, patient consents, patient referral forms, prescription files, copies of prescriptions, payment receipts, insurance records, correspondence, explanation of benefits forms, and patient progress notes for patients that visited [the psychiatrist] for medical services" for 194 of the patients specifically named in these grand jury subpoenas.

Counsel for the psychiatrist and his practice assert that, to date, almost 17,000 pages of responsive documents have been provided to the Government pursuant to these grand jury subpoenas. The Government asserts that most of these documents have been redacted to the point that they are worthless to it in its grand jury investigation. The Government also asserts that no privilege log has been provided to date.

The motions are ripe for decision.

## II. Analysis

The first issue the court must determine is what, if any, privilege applies to documents sought by these grand jury subpoenas. The psychiatrist and his practice assert that many of the requested records are protected from production by the federal psychotherapist-patient privilege, see *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), and/or the D.C. physician-patient privilege found at District of Columbia Statute § 14–307. The Government argues that the D.C. physician-patient privilege does not apply to documents sought for production before a grand jury sitting in the Western District of Virginia. While the Government concedes that the federal psychotherapist-patient privilege recognized in *Jaffee* might apply to protect certain of the psychiatrist's records, the Government argues that this privilege would not protect the records of patients who saw the psychia-

trist for pain management or the treatment of chronic pain rather than psychotherapy.

■ In federal court proceedings regarding federal law, including grand jury proceedings, questions of evidentiary privileges are determined by federal law. *See* FED.R.EVID. 501, 1101(c), (d)(2); *United States v. Gillock*, 445 U.S. 360, 367–68, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980). The law of evidentiary privileges under the federal common law is not static. "Federal Rule of Evidence 501 provides that privileges in federal court are to be 'governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'" *United States v. Dunford*, 148 F.3d 385, 390 (4th Cir.1998). Federal law, to date, does not recognize a physician-patient privilege. *See Whalen v. Roe*, 429 U.S. 589, 601 n. 28, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). Federal law does, however, recognize a psychotherapist-patient privilege. *See Jaffee*, 518 U.S. 1, 116 S.Ct. 1923.

In *Jaffee*, the Supreme Court held that confidential communications between a licensed psychotherapist and patient in the course of diagnosis and treatment are protected from compelled disclosure in discovery in a civil case. *See Jaffee*, 518 U.S. at 15, 116 S.Ct. 1923. The Court specifically rejected recognizing any "balancing component" whereby "the promise of confidentiality [is] contingent upon . . . the relative importance of the patient's interest in privacy and the evidentiary need for disclosure. . . ." *Jaffee*, 518 U.S. at 17, 116 S.Ct. 1923. The Court, however, refused to "define the details of [the] new privilege[ ]," leaving that to be developed on "a case-by-case basis." *Jaffee*, 518 U.S. at 18, 116 S.Ct. 1923. The Court further stated: "Because this is the first case in which we have recognized a psychotherapist privilege, it is neither necessary nor feasible to delineate its full contours in a way that would 'govern all conceivable future questions in this area.'" *Jaffee*, 518 U.S. at 18, 116 S.Ct. 1923 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 386, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)).

■ Unlike *Jaffee*, this case involves the application of the psychotherapist-patient privilege in the criminal context. In particular, this case involves application of the privilege to prevent production of records in response to a grand jury investigation, which raises special considerations. As the Fourth Circuit explained in *In re: Grand Jury Proceedings # 5*, 401 F.3d 247, 250 (4th Cir.2005):

Grand jury proceedings occupy an essential role in the federal criminal justice system. A grand jury serves the invaluable function of both "determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions." *Branzburg v. Hayes*, 408 U.S. 665, 686–87[, 92 S.Ct. 2646, 33 L.Ed.2d 626] (1972). To this end, a grand jury's "investigative powers are necessarily broad . . . [and its] authority to subpoena witnesses is not only historic, but essential to its task." *[Branzburg]* at 688[, 92 S.Ct. 2646] Thus, in the context of a grand jury subpoena, the longstanding principle that the public has a right to each person's evidence is particularly strong. *Id.* Absent a compelling reason, a court may not interfere with the grand jury process. *In re Weiss*, 596 F.2d 1185, 1186 (4th Cir. 1979).

A court will intervene, however, when a recognized privilege provides a legitimate ground for refusing to comply with a grand jury subpoena.

The Fourth Circuit also has stated that "[t]he subpoena power—the authority to command persons to appear and testify or

to produce documents or things—is a longstanding and necessary adjunct to the governmental power of investigation and inquisition...." *In re Subpoena Duces Tecum*, 228 F.3d 341, 346 (4th Cir.2000); *see also, United States. v. Auster*, 517 F.3d 312, 319 (5th Cir.2008) ("public interest at stake in a criminal trial of any sort is substantial, more so than in a civil case like *Jaffee* ").

■ Based at least in part on the public's strong interest in investigating and prosecuting crime, the federal courts, including the Fourth Circuit, have recognized a "crime-fraud" exception to the attorney-client privilege. *See In re: Grand Jury Proceedings # 5*, 401 F.3d at 251. Under the crime-fraud exception, attorney-client communications are not protected by privilege if they were made for the purpose of committing or furthering a crime or fraud. *See In re: Grand Jury Proceedings # 5*, 401 F.3d at 251.

> The party asserting the crime-fraud exception ... must make a prima facie showing to the court that the privileged communications fall within the exception. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir.1999). In satisfying the prima facie standard, proof either by a preponderance or beyond a reasonable doubt of the crime or fraud is not required.... Rather, the proof "must be such as to subject the opposing party to the risk of non-persuasion if the evidence as to the disputed fact is left unrebutted." ...

*In re: Grand Jury Proceedings # 5*, 401 F.3d at 251.

Furthermore, at least one Circuit Court of Appeals has recognized the crime-fraud exception to the psychotherapist-patient privilege established by *Jaffee*. In fact, the First Circuit has held that the crime-fraud exception to the psychotherapist-patient privilege allowed enforcement of grand jury subpoenas directed at a grand jury target's psychiatrists. *See In re Grand Jury Proceedings (Gregory P. Violette)*, 183 F.3d 71 (1st Cir.1999). In *Violette*, the target was the subject of a federal grand jury investigation for possible bank fraud and other related charges. *See* 183 F.3d at 72. The Government alleged that Violette had made false statements to financial institutions for the purpose of obtaining loans and credit disability insurance and then had feigned an array of disabilities to certain health care providers, including his psychiatrist, to fraudulently induce payments by the credit disability insurance. *See Violette*, 183 F.3d at 72. The court held that the crime-fraud exception to the psychotherapist-patient privilege applied in the case because "communications that are intended to further a crime or fraud will rarely, if ever, be allied with bona fide psychotherapy and, thus, protecting such communications will not promote mental health." *Violette*, 183 F.3d at 77. The First Circuit emphasized, however, that the exception to the privilege applies "[o]nly when communications are intended directly to advance a particular criminal or fraudulent endeavor...." *Violette*, 183 F.3d at 77. *See United States v. Mazzola*, 217 F.R.D. 84, 88 (D.Mass.2003) (federal psychotherapist privilege did not apply to prevent production of therapy records of important government witness in a criminal case); *see also Doe v. United States*, 711 F.2d 1187 (2nd Cir.1983) (refusing to recognize psychotherapist-patient privilege to prevent production of psychiatrist's patient records in grand jury investigation of illegal drug distribution by the psychiatrist).

While the Supreme Court has not specifically recognized the crime-fraud exception to the psychotherapist-patient privilege, the Court in *Jaffee* recognized that "[a]lthough it would be premature to speculate about most future developments in the federal psychotherapist privilege, we do not

doubt that there are situations in which the privilege must give way. . . ." 518 U.S. at 18 n. 19, 116 S.Ct. 1923. The Supreme Court also historically has recognized that evidentiary privileges must be "strictly construed," and may be recognized "only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) (holding that, apart from confidential communications, witness spouse alone has privilege to refuse to testify adversely and may be neither compelled to testify nor foreclosed from testifying).

 Based on the First Circuit's analysis in *Violette*, I am persuaded that the federal common law should recognize a crime-fraud exception to the psychotherapist-patient privilege. Based on the facts of this case, I find that this exception should apply to allow production of the records sought by these grand jury subpoenas. As explained by the First Circuit in *Violette*, it is questionable whether communications made with a psychotherapist in furtherance of a crime would be protected by privilege because they were not made in the course of "bona fide psychotherapy." *See Violette*, 183 F.3d at 77. Nonetheless, even if I assume that these records would be protected by the privilege, I find that the Government has made a sufficient prima facie showing that they should be produced under the crime-fraud exception. The Government voluntarily has limited the scope of its subpoenas to the records of the named individuals listed in the subpoenas. The Government has represented that the psychiatrist has prescribed a Scheduled II controlled substance to each of these individuals. Furthermore, the D.C. District Court has found that the government has established probable cause that violations of 21 U.S.C.

§§ 841(a)(1) and 846 of the Controlled Substances Act have occurred and that evidence of those violations is contained in the medical records of these named patients. Also, these records are being gathered for use in a grand jury investigation, proceedings which are not open to public review. To hold that the records of a psychiatrist would be protected by the federal psychotherapist-patient privilege from production in response to a grand jury subpoena under these circumstances could result in a complete inability to investigate and, if necessary, prosecute psychiatrists for the illegal distribution of controlled substances. Therefore, I find that the records requested by these grand jury subpoenas are not protected from production by the federal psychotherapist-patient privilege.

 I also reject the argument that the District of Columbia physician-patient privilege statute protects these records from production in response to these grand jury subpoenas. District of Columbia Statute § 14–307 states:

(a) In the Federal courts in the District of Columbia and District of Columbia courts a physician or surgeon or mental health professional . . . may not be permitted, without the consent of the client, or of his legal representative, to disclose any information, confidential in its nature, that he has acquired in attending a client in a professional capacity and that was necessary to enable him to act in that capacity, whether the information was obtained from the client or from his family or from the person or persons in charge of him.

(b) This section does not apply to:

(1) evidence in a grand jury, delinquency, family, or domestic violence proceeding where a person is targeted for or charged with caus-

ing the death of or injuring a human being, or with attempting or threatening to kill or injure a human being, … and the disclosure is required in the interests of public justice;….

D.C.CODE § 14–307 (2011). Thus, the D.C. statute, on its face, states that it applies only in federal courts in the D.C. District and in D.C. courts. *See Doe v. Stephens*, 851 F.2d 1457, 1465 (D.C.Cir.1988).

Based on my finding that the records sought by these grand jury subpoenas are not protected from production by privilege, it is not necessary to address the issue of whether a filter team should be used by the Government to review the subpoenaed records for privileged material and, if so, what procedures should be employed. Insofar as the Government may have improperly seized records protected by the psychotherapist-patient privilege pursuant to execution of search warrants issued by other districts, relief must be sought from the district court where the property was seized. *See* FED.R.CRIM.P. 41(g). While this opinion may be instructive to the parties as to the scope of the federal psychotherapist-patient privilege and the application of the crime-fraud exception, and may assist in their efforts to reach an agreement as to the disposition of the records seized in the search of the psychiatrist's residence and office, it is not controlling.

An appropriate order will be entered ordering the production of the records sought by these grand jury subpoenas as narrowed by the Government or, in the alternative, if the Government currently possesses these records, to allow their review.