**IN RE: GRAND JURY SUBPOENA**

United States District Court,
D. Massachusetts.

July 24, 2017
07/28/2017

---

**8.** The Court allows that part of the fee that was attributable to trial preparation.

298

---

## MEMORANDUM OF DECISION

YOUNG, DISTRICT JUDGE

### I. INTRODUCTION

An Attorney (unnamed to preserve the confidentiality of the Grand Jury) asked this Court to quash a grand jury subpoena under the justification that her[1] records are protected by the attorney-client privilege and the work-product doctrine. The government, in turn, argued that the Attorney's Client (the "Client") (unnamed to preserve confidentiality) waived his attorney-client privilege when he instructed the Attorney to respond to inquiries by third parties and that the Attorney's records fall within the crime-fraud exception to the attorney-client privilege and the work-product doctrine.

On March 30, 2017, after a sealed hearing involving counsel for each interested party, the Court entered an order granting

---

1. Again, to protect the confidentiality of the Grand Jury, the Court has arbitrarily assigned a gender to the Attorney which may, or may not, reflect reality.

in part and denying in part the Attorney's motion to quash. Electronic Clerk's Notes, ECF No. 41. The Court held that the Attorney did not have to appear before the grand jury, but that she should review her files and produce to the government any factual matters the Client previously·disclosed to the Attorney and authorized her to disclose to third parties. Id. This memorandum explains this Court's reasoning for so doing.

### A. Procedural History

The Attorney filed a Motion to Quash Grand Jury Subpoena on December 28, 2016. Mot. Quash Grand Jury Subpoena ("Mot. Quash"), ECF No. 2. The parties fully briefed the issues, Mem. Supp. Mot. Quash Grand Jury Subpoena ("Pet'r's Mem."), ECF No. 15; Reply Supp. Att'y's Mot. Quash Grand Jury Subpoena ("Pet'r's Reply"), ECF No. 33; Government's Opp'n Att'y's Mot. Quash Grand Jury Subpoena, ("Gov't's Opp'n") ECF No. 27; Government's Sur–Reply Att'y's Mot. Grand Jury Subpoena ("Gov't's Sur-reply"), ECF No. 40. On March 30, 2017, after the sealed hearing, the Court entered an Order granting in part and denying in part the motion to quash. Electronic Clerk's Notes, ECF No. 41.

### B. Factual Background

The Attorney is a practicing attorney licensed in the Commonwealth of Massachusetts and a member of the Bar of this Court. Pet'r's Mem. 2. She currently represents the Client in an ongoing federal grand jury investigation. Id. The Attorney first began representing the Client in early 2015 to respond to inquiries regarding the Client's conduct. Id. at 3. Early in 2016, the Attorney further assumed representation of the Client in connection with federal law enforcement investigations on the same alleged facts. Ibid.

Towards the end of 2016, the United States Attorney for the District of Massachusetts issued the grand jury subpoena, which the Attorney sought to quash. Pet'r's Mem. 5–6; Pet'r's Mem., Ex. 1, ECF No. 15–1, The subpoena called for the Attorney to appear before the grand jury and to produce any and all records[2] for the time period from January 1, 2015 through the present, that discuss, describe, or concern the Client's dealings with the business and their representatives, and the State Government, as well as any and all representations the Client made to the state government regarding the matter. Pet'r's Mem., Ex. 1.

## II. ANALYSIS

The Attorney asked the Court to quash the grand jury subpoena under the justification that her records are protected by the attorney-client privilege and the work-product doctrine. Pet'r's Mem. 6–7. The government countered that the Client waived the attorney-client privilege when he instructed the Attorney to respond to questions posed by certain others and also that the records fall within the crime-fraud exception to the attorney-client privilege and the work-product doctrine. Gov't's Opp'n 18–31. The Attorney also argued that enforcing the subpoena would harm her relationship with the Client and there-

---

**2.** The subpoena defines records as;

documents or electronically stored information—including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images and other data or data compilations—stored in any medium from which information can be obtained either directly, or, if necessary, after translation by you into a reasonably usable form.

Where records are stored electronically, such as a Microsoft Word or other software generated file, such records shall be produced in native format in a manner that all associated Meta data remain unaltered.

Mot. Quash, Ex. A, Subpoena 4, ECF No. 2–1.

fore would violate the Client's Sixth Amendment right to counsel of his choice. Pet'r's Mem. 7. The Court addresses each of these points in turn.

## A. Attorney–Client Privilege

 The attorney-client privilege, in a nutshell, is the privilege of a client to refuse to testify, or to have his attorney testify, as to confidential communications between the two made in the course of seeking or providing legal services. In re Grand Jury Proceedings, 417 F.3d 18, 21 (1st Cir. 2005); see also Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002). In general, the person asserting the attorney-client privilege needs to show:

> "(1) that he was or sought to be a client of [the attorney]; (2) that [the attorney] in connection with the [document] acted as a lawyer; (3) that the [document] relates to facts communicated for the purpose of securing a legal opinion, legal services or assistance in a legal proceeding; and (4) that the privilege has not been waived."

United States v. Bay St. Ambulance & Hosp. Rental Serv., Inc., 874 F.2d 20, 27–28 (1st Cir. 1989) (quoting United States v. Wilson, 798 F.2d 509, 512 (1st Cir. 1986)). "The party who invokes the privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived." In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003).

Here, it is not disputed that the subpoena includes communications between an attorney and her client made in connection with legal representation. The issue is whether an exemption to the attorney-client privilege applies.

### 1. Waiver

 "[T]he party who invokes the privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived."[3] In re Keeper of the Records, 348 F.3d at 22. Here, the government argues that the Client willingly disclosed his alleged dealings to the Attorney, and then directed the Attorney to respond to questions posed by third parties for the Client's benefit, thereby affirmatively waiving his attorney-client privilege on this specific subject matter.[4] Gov't's Opp'n 19. The Attorney, in turn, argues that the Client's responses did not constitute a waiver of the attorney-client privilege because she did not disclose the Client's communications to a third party, but rather only made reference to facts. Pet'r's Mem. 12.

---

**3.** Because the Client did not explicitly waive his attorney-client privilege, the issue is one of implied waiver. The First Circuit has noted that, given the high value placed on the attorney-client privilege, courts should be cautious about finding implied waivers. In re Keeper of Records, 348 F.3d at 23; see also United States v. Desir, 273 F.3d 39, 46 (1st Cir. 2001) ("Implied waiver requires a careful weighing of facts and 'should not be applied cavalierly.' " (quoting In Re Grand Jury Proceedings, 219 F.3d 175, 183, 186 (2d Cir. 2000))).

**4.** The Attorney made authorized responses to inquiries by a third party. Aff. Attorney, Exs. C–F, ECF Nos 16–3–16–6. In one of two ex-

changes, the Attorney stated that "to the best of [the Client's] memory he would have received the [goods] ... around the holidays;" that he "believes that the value of the services he provided exceeded the value of the [goods] he received;" that he "understood and believes that he received approximately [quantity of goods], although is not completely sure of the number;" and that he "has always understood and believes that the services he provided exceeded the value of any [goods] he received." Id. at Ex. F, ECF 16–6. The government points to these passages to argue that the Client waived the attorney-client privilege when he instructed the Attorney to make such statements. Gov't's Opp'n 19–20.

█ The Attorney has the better argument. A privileged communication and the facts recounted within it are two different things. Upjohn Co. v. United States, 449 U.S. 383, 395–96, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ("[T]he protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing."). A client does not normally lose the privilege as to communications with his attorney merely because he testifies at trial to the same events discussed with his lawyer.[5] United States v. Rakes, 136 F.3d 1, 5 (1st Cir. 1998) ("Ordinarily, deliberate disclosure of a privileged communication, where no privilege protects this further disclosure, waives a communication privilege."). Likewise, an attorney's disclosure of certain facts to third parties does not constitute a waiver of the attorney-client privilege, even if those facts were obtained from communications with the client. Id.

The government seems to argue that the attorney-client privilege does not protect communications from a client conveying information to an attorney where the client intends the attorney to disclose some or all of that information to a third party. Gov't's Opp'n 19. The government, however, does not point to binding precedent adopting the expanded waiver to the attorney-client privilege it seeks to establish.

Furthermore, such expanded waiver constitutes bad policy. See, e.g., Buford v. Holladay, 133 F.R.D. 487, 492 (S.D. Miss. 1990) ("The ultimate conclusion [of this] would be that the mere filing of a complaint or an answer abrogates the privilege as to all communications between an attorney and his client which occurred prior.... result[ing in] ... near total destruction of the attorney-client privilege."). Therefore, the Court held that the Client had not waived his attorney-client privilege.

## 2. Crime–Fraud Exception

█ The government further argues that the Attorney's records fall within the crime-fraud exception to the attorney-client privilege. Gov't's Opp'n 24–30.

█ The crime-fraud exception " 'withdraws protection where the client sought or employed legal representation in order to commit or facilitate a crime or fraud.' " United States v. Gorski, 807 F.3d 451, 460 (1st Cir. 2015) (quoting In re Grand Jury Proceedings, 417 F.3d at 22).

The party invoking the crime-fraud exception "must make a prima facie showing: (1) that the client was engaged in (or was planning) criminal or fraudulent activity when the attorney-client communications took place; and (2) that the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity."

Id. (quoting In re Grand Jury Proceedings (Gregory P. Violette), 183 F.3d 71, 75 (1st Cir. 1999)); see also United States v. Albertelli, 687 F.3d 439, 450 (1st Cir. 2012).

█ The First Circuit has interpreted such a prima facie showing as re-

---

5. In In re Keeper of Records, the First Circuit drew a distinction between disclosures of attorney-client communications made in the course of a judicial proceeding and extrajudicial disclosures. 348 F.3d at 24. For the First Circuit, the disclosure of attorney-client communications in a judicial proceeding without the subsequent revelation of all related exchanges would cause prejudice to the opposing party and subvert the truth-seeking process. Id. Here, the Attorney invites this Court to rely on In re Keeper of Records and hold that her disclosures constituted an example of extrajudicial disclosure. Pet'r's Reply 4–6. The Court declines this invitation. In drawing the above mentioned distinction, the First Circuit had business negotiations as the "ideal type" of extrajudicial proceedings. The First Circuit said nothing about such exchanges as those the Attorney engaged in here.

quiring "a reasonable basis to believe that the lawyer's services were used by the client to foster a crime or fraud." In re Grand Jury Proceedings, 417 F.3d at 23 & n.4. While this standard may be met by something less than a more likely than not probability, it still requires more than mere speculation or a distant likelihood that the client used the attorney's services to foster a crime or fraud. Id. In making these determinations, the actual involvement of the attorney in particular acts has no necessary bearing on whether the two prongs of the crime-fraud exemption are met. Gorski, 807 F.3d at 462. What matters is the client's intent. See In re Grand Jury Proceedings, 183 F.3d at 79 ("The case law dealing with the crime-fraud exception in the attorney-client context makes it transparently clear that the client's intentions control.").

Here, the government argues that there is a reasonable basis to believe that the Client communicated with the Attorney for the purpose of advancing or concealing his criminal conduct. Gov't's Opp'n 25–29. In reply, the Attorney first argues that, independently of whether the Client's conduct was lawful or not, the crime-fraud exception does not apply here because the Attorney was not involved in the representation of the Client at the time the Client allegedly performed the acts. Pet'r's Reply 12–13. That is, the Attorney argues that the first prong of the crime-fraud exception is not met because the Client's alleged crime was completed before he sought representation from the Attorney relating to those same allegations. Id.

 The Attorney is correct that the crime-fraud exception applies only when the client has engaged the services of a lawyer "in furtherance of future illegal conduct." United States v. Zolin, 491 U.S.

554, 556, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (emphasis added); see also In re Grand Jury Subpoena, 220 F.R.D. 130, 151–52 (D. Mass. 2004). Past or completed crimes or frauds do not trigger the exception. Zolin, 491 U.S. at 556, 109 S.Ct. 2619.

The Attorney's reply, however, misstates the government's position. According to the government, the Attorney produced a backdated invoice and a check as evidence that the Client had paid for certain goods in December 2014. Gov't's Opp'n 27; Gov't's Sur-reply 4–5. If true, this would meet both prongs of the crime-fraud exemption.[6]

The issue, then, becomes whether the government has made a prima facie showing that the Client used the Attorney's services to further the alleged fraud. In re Grand Jury Proceedings, 417 F.3d at 23. The government contends that the finding of probable cause by a magistrate judge in issuing a search warrant in February 2016, Gov't's Opp'n, Ex. 1, Search and Seizure Warrant, ECF No. 27–2, supplemented by the information contained in the attached affidavit of the Special Agent (unnamed to preserve confidentiality), Gov't's Opp'n, Attachment A ("Aff. Special Agent"), ECF No 27–1, provides sufficient reason to believe that the Client was engaged in ongoing criminal activity including efforts to cover his tracks. Gov't's Opp'n 28–29.

 That is incorrect, however. The search warrant shows only that a magistrate judge found probable cause that a search was justified given the underlying accusations targeting the Client. See Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The search warrant provides no prima facie support for the specific conclusion, inter

---

**6.** The Attorney also argues that the government failed to identify what specific crime or fraudulent activity committed by the Client extinguished his privilege. Pet'r's Reply 12–14. Again, this misrepresents the government's position.

alia, that the Client hired the Attorney to commit fraud. The Special Agent's affidavit is likewise insufficient. The affidavit merely summarizes what two witnesses allegedly told the grand jury about two meetings at which the Client asked them to confirm that he had received goods in exchange for services. Aff. Special Agent. The government offers no reason why it has not presented direct evidence in support of its position that the Client used the Attorney's services to foster fraud. The government, therefore, has failed to raise its proffer above mere speculation.[7] The Court, accordingly, concluded that the Attorney's records do not fall within the crime-fraud exception to the attorney-client privilege.[8]

## B. Work–Product Doctrine

■ The attorney work-product doctrine protects the files and the mental impressions of an attorney prepared in anticipation of litigation or for trial.[9] Hickman v. Taylor, 329 U.S. 495, 510–11, 67

S.Ct. 385, 91 L.Ed. 451 (1947); United States v. Textron Inc. & Subsidiaries, 577 F.3d 21, 27 (1st Cir. 2009). The party advancing the work-product doctrine bears the burden of establishing that the protection applies. In re Grand Jury Proceedings, 156 F.3d 1038, 1042 (10th Cir. 1998); In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 925 (8th Cir. 1997).

■ Because the parties are nowhere near trial at this stage, the issue here is whether the Attorney's records were prepared in anticipation of litigation. The Attorney claims, and the government does not dispute, that she began representing the Client at the end of March 2015 to respond to certain inquiries regarding the Client's conduct. Pet'r's Mem. 3. In September 2015, the Attorney also assumed representation of the Client in connection with other matters. Ibid. The government seems to concede that any materials in the Attorney's file produced after the execution of the February 2016 search warrant are covered by the work-product doctrine

---

7. The government relies on Gorski for its position. In Gorski, the district court concluded, and the First Circuit agreed, that a previous grand jury indictment provided sufficient reasonable basis for a prima facie showing of the client's intent to use his attorney's services to foster a crime or fraud. Gorski, 807 F.3d at 460–61. Unlike Gorski, a grand jury has not indicted the Client.

8. The parties raise the possibility of the Court conducting an in camera review of the privileged materials to decide whether the crime-fraud exception applies. The standard for in camera review is a "very relaxed test" that requires a lesser evidentiary showing than what is ultimately needed to pierce the privilege. In re Grand Jury Proceedings, 417 F.3d at 22. For such a review, all that is needed is a factual basis "to support a good-faith belief by a reasonable person" that "in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." Zolin, 491 U.S. at 572, 109 S.Ct. 2619 (internal quotation marks omitted). Here, although it is conceivable that an in camera review might reveal something, the

government has failed to meet this even more relaxed threshold.

9. Courts generally distinguish between "opinion" work product, which includes the mental impressions, conclusions, opinions, or legal theories of an attorney, and "ordinary" work product, which includes documents and information otherwise eligible for protection under the work-product doctrine, affording a greater degree of protection to the former. Upjohn, 449 U.S. at 399–400, 101 S.Ct. 677. The Supreme Court in Hickman suggested that ordinary work product (though it did not use the term) might be discoverable when it "is essential to the preparation of one's case," or in circumstances where the information would be difficult or impossible to obtain. Hickman v. Taylor, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947); see also Fed. R. Civ. P. 26(b)(3). Here, the government seeks production of the Attorney's ordinary work product only, not her opinion work product. Gov't's Opp'n 38.

because they were prepared in anticipation of litigation. See Gov't's Opp'n 36–37. Therefore, the dispute here is whether the records of the Attorney's legal representation of the Client between March 2015 and February 2016 were "prepared in anticipation of litigation" and are, therefore, protected by the work-product doctrine.

Courts usually treat the commencement of a governmental investigation as both a sufficient and a necessary condition to satisfy the "anticipation of litigation" requirement for the work-product to attach to an attorney's files. In re Grand Jury Subpoena, 220 F.R.D. at 157. This Court, however, has previously held that "in some cases, the likelihood of an enforcement action or litigation may be so great that materials prepared before an investigation begin to qualify for work product protection." Id. Under this view, to satisfy the "anticipation of Litigation" requirement, the Attorney and the Client must have reasonably believed that either a federal or state enforcement action was likely, even before the February 2016 search warrant was issued. Id.

■ In other words, the main question here is whether the Attorney's files generated in connection with her legal representation of the Client before the February 2016 search warrant was issued were prepared or obtained because of the prospect of litigation. Id. at 162 (emphasis added) (citing Maine v. United States Dep't of Interior, 298 F.3d 60, 68 (1st Cir. 2002)); see also United States v. Adlman, 134 F.3d

1194, 1197 (2d Cir. 1998). The "because of" standard extends work-product protection to materials which were not "primarily" prepared due to the possibility of litigation. In re Grand Jury Subpoena, 220 F.R.D. at 162.

■ At the hearing on March 30, 2017, the Attorney's counsel directed the Court's attention to the fact that the Attorney, in addition to her criminal defense work, is also a well-regarded attorney in other relevant areas of the law, suggesting that the "anticipation of litigation requirement" element was present from the start of the legal representation. Mar. 30, 2017 Hearing Tr. 17:1–3, 7–10, ECF No. 44. The Court accepted this argument by able counsel and concluded that the Attorney's files in connection with the Client's legal representation generated before the February 2016 search warrant were prepared or obtained because of the prospect of actual litigation. Accordingly, any material the Attorney produced in connection with the legal representation of the Client within that relevant time-frame is also protected by the work-product doctrine.[10]

## C. Right to Counsel of Choice

The Attorney also argues that enforcing the present grand jury subpoena would violate the Client's Sixth Amendment right to counsel of his choice. Pet'r's Mem, 26–30. The Attorney draws the Court's attention to United States v. Diozzi, 807 F.2d 10 (1st Cir. 1986). The government in Diozzi

---

**10.** The government also raises a crime-fraud exception with respect to any materials the Court concludes are protected by the work-product doctrine. Gov't's Opp'n 37. The crime-fraud exception with regard to the attorney-client privilege differs in one key aspect from how the exemption applies in connection with the work-product doctrine. "[H]owever guilty the client may have been, an innocent attorney can still invoke the work product doctrine," In re Grand Jury Subpoe-

na, 220 F.R.D. at 152. The analysis here is similar to that supra. The government's only evidence of a prima facie case of the Attorney's fraudulent legal representation of the Client is the February 2016 search warrant and the affidavit signed by a Special Agent. No direct evidence is presented about the Attorney's intent. The record before the Court does not support a crime-fraud exemption with regard to any documents protected by the work-product doctrine.

moved to disqualify defendants' counsel six days before trial on the ground that it intended to call them as material witnesses at trial to establish that the counsel's submissions to the government contained false and misleading statements. Id. at 12. The trial court allowed the government's motion to disqualify, and the defendants were convicted of income tax evasion. Id. On appeal, the First Circuit concluded that the government had infringed the defendants' Sixth Amendment right to counsel of their own choice at trial, reasoning that the defendants' offer to stipulate to the statements contained in the written submissions and made by counsel acting under valid power of attorney was sufficient to avoid disqualification. id. at 13–14. The Attorney argues that Diozzi is instructive here because the Client had agreed to stipulate that he authorized the Attorney to make the relevant representations and submissions to others. Pet'r's Mem. 5, 27.

■ The Constitution grants a defendant "a fair opportunity to secure counsel of his own choice." Powell v. Alabama, 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932); see also United States v. Poulack, 556 F.2d 83, 86 (1st Cir. 1977). The Attorney's reliance on Diozzi, however, is misplaced. It is generally agreed that a right to counsel of choice only attaches at the initiation of adversarial proceedings. Kirby v. Illinois, 406 U.S. 682, 688, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (Sixth Amendment right to assistance of counsel does not attach until "the time that judicial proceedings have been initiated."); United States v. Melendez–Santiago, 644 F.3d 54, 59 (1st Cir. 2011) ("Sixth Amendment right to counsel . . . attaches at or shortly after 'the initiation of adversary judicial criminal proceedings—whether by formal charge, preliminary hearing, indictment, information, or arraignment.'" (quoting United States v. Boskic, 545 F.3d 69, 91 (1st Cir. 2008))). As the Attorney acknowledges, Pet'r's Mem. 27, the issues in Diozzi arose during trial, after the client's Sixth Amendment right had already attached.

The Attorney also notes that other circuits have held that governmental interference with a defendant's right to counsel of choice in the pre-indictment phase of an investigation can have Sixth Amendment consequences when the case is later indicted. Pet'r's Mem. 29–30 (citing United States v. Stein, 541 F.3d 130 (2d Cir. 2008); In re Grand Jury Proceedings (Goodman), 33 F.3d 1060, 1062–63 (9th Cir. 1994)). Those cases, however, recognized the defendants' pre-indictment Sixth Amendment rights "absent justification" by the government. Stein, 541 F.3d at 156. Here, the government has articulated coherent and plausible justifications to subpoena the Attorney's records, even though many of those justifications ultimately fail as matter of law.

■ The Court, however, expresses grave concern about the government's practice of subpoenaing potential defendants' counsel during a grand jury investigation. By turning defense counsel into a witness, these subpoenas might result in the disqualification of counsel from representing their clients due to an artificially-created conflict of interest. Generally, in moving to disqualify a defendant's chosen counsel, the government bears a heavy burden of establishing that disqualification is justified. Fonten Corp. v. Ocean Spray Cranberries, Inc., 469 F.3d 18, 23 (1st Cir. 2006) ("[A]ttorney disqualification is a 'drastic remedy,' reserved for cases where the attorney has 'entangled himself to an extraordinary degree' with his client." (quoting United States v. Locascio, 6 F.3d 924, 934 (2d Cir. 1993))); Diozzi, 807 F.2d at 12 ("[D]isqualification of defense counsel should be a measure of last resort."); see also United States v. Washington, 797 F.2d 1461, 1465 (9th Cir. 1986). For instance, a defendant's right to counsel of choice may

be limited if a defendant's selection of counsel would cause undue delay or otherwise interfere with the orderly administration of justice. United States v. Hallock, 941 F.2d 36, 44 (1st Cir. 1991) (citing Poulack, 556 F.2d at 86). Subpoenaing potential defendants' counsel during a grand jury investigation risks constituting an unacceptable workaround to bearing such a heavy burden.[11]

## III. CONCLUSION

For the foregoing reasons, the Court GRANTED IN PART and DENIED IN PART the Attorney's motion to quash.

---

11. The government might benefit from the First Circuit's "best evidence" test to assess whether the government's need to present its case at a trial outweighs the defendant's right to his attorney of choice. United States v. Cortellesso, 663 F.2d 361, 363 (1st Cir. 1981). "Where the government's proffer of a defense attorney's testimony will force the attorney's removal, the government may only call the attorney as a witness if, without his or her testimony, 'the government must settle for less than its best evidence.'" Hallock, 941 F.2d at 44 (quoting Cortellesso, 663 F.2d at 363).